### LEWIS COOPER v. THE STATE.

#### *No. 7054.   Decided June 18.*

1.   **Practice—Evidence.**—On the trial of the accused under an indictment which in the second count charged the offense of receiving stolen property knowing it to be stolen, the State, over the objection of the defense, and for the purpose of showing the theft of the property by another person than the accused, and before it came into the possession of the accused, was permitted to read in evidence the indictment, judgment of conviction, and sentence of one H. for the theft of said property—the purpose of said evidence being limited by the charge of the court.   *Held,* correct.

2.   **Same.**—The State having introduced in evidence the indictment against H. for the theft of the property and the record of his conviction thereunder, the defense proposed but was not permitted to prove that when he was served with a copy of the indictment H. declared publicly that the accused had no part or connection with the theft of the property, but that he bought it in good faith and for value subsequent to the theft of the same.   *Held,* that the proposed proof was properly excluded as being in part hearsay and in part irrelevant.

3.   **Same—Principal Offenders—Accomplice Testimony—Charge of the Court.**—See the statement of the case for the substance of evidence *held* to raise the question as to the sufficiency of the corroboration of the accomplice testimony, and to authorize a charge of the court as to principals in crime.

4.   **Same—Evidence—Possession of Recently Stolen Property—Charge of the Court** in effect instructed the jury that the personal, exclusive, unexplained, and recent possession of property after the same was stolen was sufficient evidence to warrant the conviction of the accused of the theft of the property.   *Held,* error.   Such evidence constitutes a mere circumstance to be considered by the jury in connection with the other proof in the case.

APPEAL from the District Court of Wilbarger.   Tried below before Hon. G. A. Brown.

The conviction in this case was for the theft of Frank Crenshaw's horse. The penalty assessed was a term of five years in the penitentiary.

Frank Crenshaw was the first witness for the State.   He testified, in substance, that his certain grey horse was stolen from his stable in the town of Vernon, Wilbarger County, Texas, on the night of November 9,

1888. The front door of the stable was locked on that night. The double back doors had been closed and nailed together so as to form a solid wall. The stable was entered and the horse removed therefrom by some party or parties who broke open the double back doors. Not more than three parties in the town of Vernon knew anything about the double back doors. Lee Roguemore was one of the parties. He hauled the witness a load of hay a few days before the theft of the horse, and put it into the stable through the opening made by the witness in prying open the two said doors. Witness never saw the defendant about his, witness's, premises or stable, but saw him in company with Mont Hill, in the town of Vernon, on the evening preceding the theft. He hunted but could not find the defendant in Vernon on the morning after the theft. Witness next saw his said grey horse in the possession of Mr. Creech, in Floresville, Wilson County, Texas, in June, 1889.

John Murrell was the next witness for the State. He testified, in substance, that in November, 1888, he occupied sleeping quarters in Holman's livery stable, in Vernon, Texas. Soon after dark on the night that Crenshaw's horse was stolen, and while the witness was at the said stable, the defendant passed through to the adjoining granary, whence he brought his saddle which he placed in the gangway of the stable. Thence he went into the stable office, from which he got his pistol. Thence the defendant and witness went up town, and soon separated. Witness returned to the stable about 10 o'clock on that night. He did not observe the saddle in the gangway on his return, though it might then have been there.

The substance of the testimony of the State's witness Creech, sheriff of Wilson County, Texas, was that he arrested the defendant in Wilson County in the spring of 1889. Defendant then had in his possession the Crenshaw horse described in the indictment. Wilson County was about 500 miles distant from Wilbarger County. Witness had known the defendant as a resident of Wilson County since the fall of 1886. His reputation for honesty had always been good prior to the presentment of this indictment.

Dave Shannon was the next and the most important witness for the State. He testified, in substance, that he was employed in Holman's livery stable in the town of Vernon at the time of this offense. On the evening preceding the night of the theft he had a conversation on the streets of Vernon with the defendant and Lee Roguemore and Mont Hill. In that conversation the parties named and the witness entered into an agreement under which defendant, Roguemore, and Hill were to steal Crenshaw's horse that night from Crenshaw's stable, and the witness was to remove the defendant's saddle from Holman's stable and deliver it to defendant, Roguemore, and Hill at a point on the prairie between Holman's stable and Crenshaw's house. Complying with his part of the agreement the witness went to Holman's stable between 10 and 11 o'clock on that

night, got defendant's saddle, which he found in the gangway, took it to the place agreed upon, and delivered it to defendant, Roguemore, and Hill. Those parties were then in possession of the Crenshaw grey horse and two other horses. The saddle was put on the Crenshaw horse. Defendant then rode the horse off. Witness returned to Vernon, and did not see the defendant again until after he was arrested.

Cross-examined, the witness testified that upon his return to town from the place where he delivered the saddle he got in company with Dud Roach, Miss Dora Capps, and the Misses Cattell, whom he accompanied to a literary entertainment at the Bogan school house, about five miles east of Vernon. He had no watch on his person that night and was unable to specify the hour at which he started to or returned from the literary entertainment. He knew, however, that he delivered the saddle to defendant, Roguemore, and Hill before he started to the entertainment, and had no recollection of testifying on the trials of Roguemore and Hill that he delivered the saddle after he returned to Vernon from the entertainment. Witness testified on this trial in consideration of the dismissal of the prosecution against him for this same offense.

Sam Cantrell testified for the State that he attended a party either at Mrs. Spencer's house or that of Dave Rochelle on the night that Crenshaw's horse was stolen. While in the alley in the rear of Holman's stable, on his return from that party, he saw Dave Shannon riding from the direction of the stable towards Crenshaw's house. Shannon then had a saddle behind him on his horse. This was between 10 and 11 o'clock. The State rested.

Miss Dora Capps testified for the defense that she and the Misses Cattell and Dud Roach, in company with the State's witness Shannon, attended a literary entertainment at the Bogan school house on the night of the alleged theft. They left Vernon together before dark, remained at the school house until the close of the exercises, and started on their return to Vernon at 10 o'clock by Shannon's watch. Witness knew that Shannon did have a watch on his person that night, because she saw him exhibit it.

Dud Roach testified for the defense that he was in company with Shannon during the time and at the places indicated by Miss Dora Capps in her testimony, and from the time of their return to Vernon from the Bogan school house, at the restaurant in Vernon, until 12 o'clock. He knew as a matter of fact that Shannon had a watch on that night.

G. W. Cooper, the father of the defendant, testified for the defense that he lived in Wilson County, and lived there in November, 1888. About the 20th day of that month the defendant came to the witness's house riding the animal described in the indictment. Witness asked him where he got the horse, and he replied that he bought him about fifty miles north of Vernon, paying $65 for him. Defendant rode that horse openly, and

kept him in a public livery stable in Floresville, Wilson County. He refused several times to either sell or trade the horse.

John Sells testified for the defense that he lived in Wilson County, Texas. Late in November, 1888, the witness met the defendant near Floresville, in the said Wilson County, riding the horse described in the indictment. On that occasion defendant told the witness that he bought the said horse from one John Ellison, at a place north of Wilbarger County. Defendant afterwards, in the presence of the witness, refused to sell the horse for $90 in cash. While in possession of that horse in Wilson County the defendant rode and claimed him openly.

J. E. Spears and E. Lowe testified, respectively, for the defense that they were members of the jury on the trial of Lee Roguemore for the theft of the horse involved in this trial. On that trial the State's witness Shannon testified that he removed the defendant's saddle from Holman's stable and delivered it to defendant after he returned from the entertainment at the Bogan school house.

At this stage of the trial the defense rested, and the State, over the defendant's objection, introduced in evidence a joint indictment against Hill, Roguemore, and defendant for theft of the Crenshaw horse, and the record of the trial and conviction of Hill thereunder. In this connection the defense proposed but was not allowed to prove that when a copy of the said indictment was served upon Hill, he, Hill, declared publicly that the defendant had no connection whatever with the theft of the said horse, but that subsequent to the theft he bought the said horse from him, Hill, in good faith and for value. The proof otherwise showed that Hill passed under the name of John Ellison when in Wilbarger County.

J. E. Faulkner testified for the State, in rebuttal, that he was the driver of the mail coach between Vernon and Mangum both before and after the alleged theft of Crenshaw's horse. Defendant with a saddle in his possession, traveled with witness on the mail coach from Mangum to Vernon about three weeks before the alleged theft. He then had no money, and had never paid his fare.

The State closing, the defense introduced Dave Rochelle as a witness in rebuttal of the testimony of the State's witness Cantrell. He testified that he did not move to the place in Wilbarger County indicated by Cantrell in his testimony until December 25, 1888, more than a month after the alleged theft, and that he gave his first party at that place three or four months after he moved there. Mrs. Spencer testified that she never had given a party at her house, and had never seen Sam Cantrell to know him.

*McCall & Britt Bros., Charles Wheeler, Jo. Hall,* and *N. P. Jackson,* for appellant.—1. The first error assigned calls in question the correctness, as applied to this case, of the second paragraph of the charge defining principal offenders. Abstractly the definition may be correct, but it

is based upon no legitimate proof in the case.    And in this connection we submit the following propositions:

The court is required on a felony trial to instruct the jury upon every phase of case legitimately presented by the evidence.    But likewise it is prohibited from charging on an issue which does not rest upon some competent proof in the case.    Hobbs v. The State, 16 Texas Ct. App., 517; Bean v. The State, 25 Texas Ct. App., 346.

Conviction can not be had on uncorroborated testimony of an accomplice.

If this be true, then the testimony of an accomplice, uncorroborated by other legal testimony, stands before the court and jury as no evidence at all.

The charge of the court must be formulated and delivered by the judge presiding at the trial.    It must present the law as made by the evidence. It must not submit an issue not raised by the evidence.    A fact testified to by an accomplice who is not corroborated by other proof is not an issue made by the evidence, corroboration being necessary to impart to the testimony of an accomplice the force of evidence.    Now, to support a conviction for theft, the proof must connect the defendant with the actual taking of the property.

No testimony on this trial other than that of Shannon, the self-confessed accomplice, connects the appellant with the taking of Crenshaw's horse; and to connect him with such taking, Shannon testifies to facts which, if true, establish a conspiracy between himself and this defendant and two others to commit the theft, and which, if true, constitutes the appellant a principal.    The fraudulent taking of the horse is the very gist, the *factum probandum*, of the offense for which appellant has been convicted.    It is not sufficient that the proof shows the horse to have been taken.    It must show that it was taken by the defendant, acting either alone or in conjunction with others.    No witness but Shannon connects the defendant with the taking.    Shannon was under indictment for the same offense, confessed his complicity, turned State's evidence, and, as to the taking, was not even remotely corroborated by a single suggestion in the evidence.    In this state of case the court charged as to principal offenders.    Defendant promptly excepted, and this error should reverse.

2.    The fifth paragraph of the charge reads as follows:    "The possession of property stolen is not positive evidence of guilt, but is a circumstance sufficient to warrant the presumption of guilt on the part of the person having such possession, if the evidence shows such possession was recent, personal, and exclusive," etc.    *    *    *    This charge was excepted to.    It is upon the weight of evidence.    It invades the peculiar province of the jury in this particular.    But more vicious still, it is radically wrong.    It is not law, abstractly or otherwise.    It states a legal proposition the very converse of which is true.    So far from the posses-

sion of recently stolen property being a " circumstance sufficient to warrant the presumption of guilt," etc., it is not even, when the possession is unexplained, anything more than circumstantial evidence of guilt (Sullivan's case, 18 Texas Ct. App., 623), and it is so far circumstantial in character that when relied upon by the State the failure of the court to charge the law of circumstantial evidence is fundamental error.  Count's case, 19 Texas Ct. App., 450.

The charge objected to in this case is essentially the same that was held erroneous in Lee's case, 27 Texas Court of Appeals, 476.  This charge reads:  " Possession of property stolen is not positive evidence of guilt, but is a circumstance sufficient to warrant the presumption of guilt," etc. In Lee's case, *supra*, the court charged:  " Possession of property recently stolen is presumptive evidence of guilt," etc.   Judge Hurt, delivering the opinion in Lee's case, quotes from Terry's case, 41 Texas, 483, to the effect that " proof of the possession of property, however recent, and whether explained or not, is merely a fact or circumstance to be considered by the jury in connection with all the other facts submitted to them in determining the guilt of the possessor," and comments thereon as follows:  " We deem it necessary here to make some observations on this subject.   Under our code the judge shall not discuss the facts nor charge upon the weight of evidence; and this being a question of fact and not of law, any instruction given as to the effect of or presumption arising from other facts proved is not permitted by the code.   But while the court is not permitted to draw conclusions or make presumptions from other facts, it does not follow that the jury can not; on the contrary, this is their duty as well as province.   *   *   *   A is on trial for theft.   The State proves that he was in exclusive possession of the stolen property; that his possession was sufficiently recent to call upon him to explain; that an explanation was directly or constructively demanded of him, and that he failed to explain.   These are all the facts of the case bearing upon the fact as to whether not he was the taker of the property.   Now, as a matter of fact, not of law, the presumption would arise that he was the person who took the property, and the jury would be authorized to make such presumption and convict him.   But while this is so, it does not follow that the court can instruct the jury to make such presumption and convict; nor can the court tell the jury that the law engrafts upon such a state of case such a presumption."   This decision fits this case like Paddy Regan's breeches did his wife—" *Skin-tight, begorra, with niver a howl in 'em for her to crape out.*"

3.   The ninth paragraph of the charge reads:  " If defendant was not present and participated in the actual taking of the horse, but obtained said horse by purchase from another, then you must acquit him of theft, though the person from whom he purchased was the actual thief, unless you find from the evidence that defendant's purchase was in pursuance of

an agreement by and between defendant and such other person to steal said horse, and such purchase was not in good faith, but was for the 'purpose of covering up his complicity in the original theft, in which event— that is, in the event defendant's purchase was in pursuance of the agreement and for the purpose herein mentioned—he would be guilty as a principal offender, though he was not bodily present on the ground and when the original taking occurred."

This charge is erroneous because it assumes the *factum probandum*— that the horse was stolen. It assumes a conspiracy between defendant and another to steal the horse—a fact testified by no witness save Shannon, the self-confessed and wholly uncorroborated accomplice.

But does it state a legal proposition? Could defendant be a principal in the theft if he was not present and did not participate in the taking? If he neither aided by acts nor encouraged by words the taking of the horse by another? Suppose he did buy the horse knowing it to be stolen, and bought it in bad faith, still he could not be a principal. Suppose he did agree before the theft to buy the horse from the thief, but was not present at the taking, did not advise the taking, did not command the taking, did not aid in the taking, did not encourage the taking by act or word, could he be principal? Under these circumstances he might be guilty of receiving stolen property, etc., but as to theft he would not even be an accomplice, though perhaps—and only perhaps—he might be an accessory.

This conviction rests upon the theory of the State that the defendant and Roguemore and Hill and Shannon conspired to steal Crenshaw's horse, and that while Shannon was performing his part of the criminal enterprise, defendant and Roguemore and Hill stole the horse from Crenshaw's stable, and that defendant took him off. The part assigned to Shannon was to get defendant's saddle out of Holman's stable and take it to defendant, Hill, and Roguemore on the prairie. Shannon alone testified that he performed his part of the agreement, without a shadow of evidence to corroborate him. Shannon alone testified that he delivered the saddle to defendant et al., who were then in possession of Crenshaw's horse, without a single circumstance of legal consequence to corroborate him. Shannon alone testified to the conspiracy, and is not corroborated even inferentially or by suggestion in the proof. Even Shannon does not testify that defendant participated in the taking of the horse, or that he performed any part of the agreement prior to or at the time of the taking.

Uncorroborated the testimony of Shannon was not evidence in the case, and not being evidence what right had the court to base a charge upon it? Wrong in principle, unwarranted by the proof, and excepted to when given, this charge, we respectfully insist, constitutes reversible error.

4. The evidence for the defense, except that contradictory of the prosecuting witnesses, consisted in the main of proof of the defendant's ex-

planation of his possession when it was first challenged. The State was permitted over defendant's objection to read as rebutting evidence a joint indictment against Roguemore, Hill, and the defendant, charging them with this same offense, and the verdict, judgment, and sentence of Hill thereunder.

Now we submit that unless this evidence was in rebuttal of some fact testified for the defense it was clearly inadmissible, and it is manifest from its character that it was calculated to injure the defendant.

What fact proved for the defense did this evidence contradict? It was not testified for defense that Crenshaw's horse was not stolen; it was not testified that defendant was not jointly indicted with Hill and Roguemore for that theft, nor was it testified that Hill was not tried and convicted upon that indictment—the only facts that evidence could prove. Hill was tried and convicted of the theft, but does that prove—or could the fact that defendant was jointly indicted with him prove—that he participated in the taking of the horse? What possible matter could the evidence objected to prove more than that under a joint indictment against the three parties Hill was separately tried and convicted? The defense relied upon was Cooper's purchase of the horse. All of his affirmative evidence was directed to that issue and to that issue alone. Admit, for the sake of argument, that it was a fabricated defense, what possible bearing could Hill's conviction have upon his case, in the absence of testimony denying that Hill stole the horse or was tried or convicted?

In connection with this matter we desire to call the court's attention to the ruling of the trial court excluding evidence offered by defendant. The State having introduced in evidence the indictment, etc., referred to — for what legitimate purpose is not appparent — the defendant proposed to prove by Turknett that when the copy of the said indictment was served on him, Hill declared publicly that defendant had nothing to do with the taking or theft of the horse, but bought the said horse in good faith for value, etc. Ordinarily, perhaps, this proposed evidence would partake of the nature of hearsay, but in view of the evidence admitted for the State, was it not admissible for defendant as rebutting testimony? It wont do, under these circumstances, to say that the admission of incompetent evidence for the State over objection will not justify the admission of ordinarily incompetent evidence for the defense. If the indictment introduced in evidence presupposed anything at all, it was a conspiracy between defendant and Hill and Roguemore—a leading issue in the case. Prejudice was worked to the defendant when the indictment, etc., was admitted over his objection, and it occurs to us that such incompetent evidence being admitted over his protest, the defendant was entitled to rebut, if he could, any presumption arising against him upon such evidence; that the declartions of Hill at the time he was served with the

joint indictment was *res gestæ*, and in view of the reception of the indictment in evidence, admissible.

5.   After all, this conviction rests upon manifestly insufficient evidence, and should for that reason be reversed.   Upon the theory advanced by the State it devolved upon the prosecution to prove by competent and sufficient evidence, beyond a reasonable doubt, that defendant and Roguemore, Hill, and Shannon conspired to and actually did fraudulently take and carry away Crenshaw's horse.

To these facts Shannon unqualifiedly testifies, confessing his own infamy in the same breath, and putting himself beyond the pale of belief, unless supported as to material facts by other competent testimony connecting defendant with the crime.   Does the record contain any such corroborating evidence?   Let us see.   It will take but few lines to dissect the whole testimony.   Although not satisfactorily proved, we will admit for the argument that Crenshaw's horse was fraudulently taken by somebody.

Shannon swears that he, Roguemore, Hill, and defendant agreed to steal Crenshaw's horse on the night alleged.   That he, Shannon, was to take defendant's saddle from Holman's stable to a point on the prairie and deliver it to defendant, Hill, and Roguemore.   That Hill, Roguemore, and defendant were to steal (take) the horse.   That defendant was to ride the horse off.   That pursuant to agreement he went to Holman's stable that night, found defendant's saddle in the gangway, took it to the point on the prairie agreed upon, and delivered it to defendant, Hill, and Roguemore, who were then in possession of Crenshaw's horse.   That he saw defendant ride off on the horse, and did not see him again until after his arrest.   That he, Shannon, then returned to town (Vernon) and went thence with Miss Capps, the Misses Cattell, and Roach to a literary entertainment five miles in the country; that he had no watch, and did not know the hour when he started to or returned from the literary entertainment, but that he removed the saddle from the stable and delivered it to defendent et al. before he went to the entertainment.

This is absolutely all of the direct inculpatory evidence in the case.   It is the testimony of a witness declared by the law to be infamous and unworthy of belief "unless he is corroborated in some material matter connecting the defendant with the taking of the alleged stolen property." Powell's case, 15 Texas Ct. App., 441.

How far is this thief corroborated?   Let us see.

It was proved that defendant was in Vernon on the evening of the 9th, but could not be found in town on the morning of the 10th.   Murrell testified that shortly after dark defendant took his saddle out of a granary and placed it in the gangway of Holman's stable, and that when he, witness, returned to the stable about 11 o'clock he did not observe the saddle

in the gangway. But he did not look for it, and did not know that it was not still there.

Cantrell testified that on the night of the alleged theft, November 9, he went to a party either at the house of Mrs. Spencer or of Rochelle, and that on his way home from that party, about 10 o'clock, he saw Shannon riding toward Crenshaw's house carrying a saddle behind him on his horse.

This is absolutely the whole, the beginning and the end, the alpha and the omega, the "A" and the "Izzard" of the corroborating proof. Does it even establish the commission of the offense?—the very first indispensable element of corroborative testimony. Does it relate to a fact testified by Shannon material to the case? Does it connect the defendant with the taking of the horse? Powell's case, *supra*. Does the fact that defendant was seen in Vernon on the evening of the 9th and could not be found on the morning of the 10th connect him with theft? Does the fact that defendant removed his saddle from the granary to the gangway establish the fact that the horse was stolen? Does it connect the defendant with the taking? this conviction being for theft. May not the saddle in fact have been in the gangway when Murrell returned to the stable at 11 o'clock? If Cantrell in truth saw Shannon with a saddle at 10 o'clock, does it follow that it was defendant's saddle? If it was, may not Shannon have stolen it, even as he swore he helped to steal the horse?

Now how far is Shannon contradicted by proof on the trial? He swears that he took the saddle to the rendezvous before he went to the literary entertainment. On the trial of Roguemore he swore that he took it after he returned to Vernon from the entertainment. He swears that he had no watch on the night of the theft, and therefore could not tell the hour at which he conveyed the saddle from the stable, when he started to the entertainment, or when he returned to Vernon.

Miss Capps and Roach, who, according to his own testimony and their own, went with him to the entertainment, starting before dark, swear that he did have a watch, exhibited it, and told them the time.

Did Cantrell tell the truth on the stand? Did he see Shannon on that night? He swears that he attended a party on that night either at the house of Mrs. Spencer or the house of Rochelle, and returning thence saw Shannon with the saddle. That was the night of November 9, 1888.

Rochelle testified that he did not move to the place indicated by Cantrell until December 25, 1888, more than a month after the alleged theft, and that he did not give a party until he had lived there two or three months.

Mrs. Spencer testified that she never had a party at her house in her life, and never to her knowledge saw Sam Cantrell.

The truth is Colonel Samuel Cantrell swore to a what-you-call-it. He did not attend a party at Mrs. Spencer's on that night; he did not attend a party at Mr. Rochelle's; he did not see Shannon with a saddle on the

night of the theft, and it would amount to nothing as against this defendant if he did.    But *falsus in uno, falsus in omnibus.*

6.    When his possession was first challenged the defendant explained that he bought the horse fifty miles north of Vernon.    Consistent with this explanation, defendant openly used and asserted his title to the horse and refused to trade or sell him.

"To constitute a prima facie case of theft by reason of the possession of the stolen property the evidence must show a concurrence of the following facts:    The property must have been stolen by some person; the defendant's possession of the property must have been recent; he must have been called upon to explain his possession, and he must have failed to explain it."    Schindler's case, 15 Texas Ct. App., 394.

Reasonable explanation of possession devolves the burden of proving the explanation false upon the State, and failure of the State to do so entitles defendant to acquittal.    Windham's case, 19 Texas Ct. App., 413.

The uncorroborated testimony of the accomplice eliminated, the case against defendant rests upon his possession.    He explained it.    His explanation was reasonable.    It was not controverted nor attempted to be controverted.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—There are two counts in the indictment, the first charging the theft of a horse, and the second the receiving said horse knowing the same to have been stolen.    In support of the second count, to show that said horse had been stolen by another person than the defendant, and before defendant was found in possession of said horse, the State was permitted, over the defendant's objections, to introduce and read in evidence an indictment charging one Hill with the theft of said horse, and a judgment of conviction and sentence of said Hill for said theft.    For the purpose for which this testimony was admitted we think it was relevant and otherwise admissible.    Whart. Cr. Ev., sec. 602.    It afforded prima facie proof that the horse had been stolen by Hill at the time the defendant came into possession of it.    That said testimony was admitted after defendant had closed his testimony and was not in rebuttal of any testimony adduced by him is not a valid objection on appeal, it not appearing that the trial court abused its discretion to the injury of the defendant in admitting said testimony.    This testimony was by the charge of the court expressly limited to the purpose for which it was admitted, and the jury were told to consider it for no other purpose.

As to the testimony offered by the defendant and rejected, it was clearly inadmissible.    It was in part hearsay, and in part irrelevant and immaterial.

There is ample evidence, we think, to warrant the instructions as to the

law of principals in crime. That defendant and others acted together in the theft of the horse to such extent as to make them all principals in the theft is clearly shown by the testimony of the accomplice witness Shannon. Whether or not the testimony of the accomplice was sufficiently corroborated to warrant a conviction was a question for the jury to determine, and the trial court properly and correctly submitted that question to the jury; and in doing so it was not only right but was the duty of the court to instruct the jury in relation to the law as to principals. It is contended, however, by counsel for defendant that there is no evidence which corroborates the accomplice testimony to the extent required by the law, and that the uncorroborated testimony of an accomplice can not form the basis of an instruction from the court. We differ with counsel in his view of the evidence and of the law. We think there is evidence corroborating the accomplice testimony. That defendant was found in possession of the horse shortly after the same was stolen is certainly a corroborating circumstance tending to connect the defendant with the theft. That he placed the saddle where Shannon could get it is another such circumstance. That he was in the town on the night the horse was stolen but could not be found there on the next morning, and when seen a few days thereafter was 500 miles distant from the place of the theft, are circumstances tending to connect him with the theft of the horse, and which in material matters corroborate said accomplice testimony.

We find the charge of the court free from error except in one particular. As to the circumstance of defendant's possession of the horse recently after the same was stolen, the charge is as follows: "The possession of property stolen is not positive evidence of guilt, but is a circumstance sufficient to warrant the presumption of guilt on the part of the person having such possession, if the evidence shows such possession was recent, was personal and exclusive, and unexplained," etc. This paragraph of the charge was excepted to by the defendant at the trial, and a bill of exception thereto was duly reserved. In Lee v. The State, 27 Texas Court of Appeals, 476, this court held a similar instruction erroneous, as being upon the weight of evidence. In the above quoted paragraph the jury was told that the personal, exclusive, unexplained, and recent possession of the horse after the same was stolen was sufficient evidence to warrant the conviction of the defendant of the theft of said horse. The instruction should have been that such possession was a mere circumstance to be considered by the jury in connection with other evidence in the case in determining the issue of defendant's guilt.

Because of the above stated erroneous instruction, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.