Jenkins vs. The State.

JENKINS vs. THE STATE.

*October 21, 1884 — January 13, 1885.*

CRIMINAL LAW AND PRACTICE. *(1) Receiving stolen goods: Identification. (2) Presumption from omission to testify. (3) Possession of stolen goods: Presumption against receiver: Recent possession. (4) Thief may be receiver. (5) Larceny: Embezzlement. (6) Circumstantial evidence: Instructions.*

1. A person may be convicted of receiving stolen money upon evidence showing his poverty previous to the larceny and that shortly thereafter he was in the unexplained possession of a large amount of currency, although such currency is not specifically identified with that which was stolen.

2. Though the omission of the defendant in 'a criminal case to testify in his own behalf creates no presumption against him, yet his failure to account in any way for his possession of a large sum of money may be a significant circumstance to be considered by the jury.

3. The possession of stolen goods may raise a presumption of guilt against a person charged only with feloniously receiving them; and such presumption may arise even though such goods were not found until more than three months after they were stolen, especially when the circumstances tend to show that they had been in the defendant's possession for a considerable time before their discovery.

4. One who receives stolen goods may be convicted of that offense although he also assisted in the theft.

5. If money in the possession of an express company and lying in its safe waiting to be delivered to the consignee, is taken by an agent of the company *animo furandi,* such act is larceny and not a mere embezzlement.

6. An instruction that "circumstantial evidence is a species of presumptive evidence, and it consists in this, that where there is no satisfactory evidence of the direct fact, certain facts which are *assumed* to have stood around, or been attendant on, the direct fact, are proved, from the existence of which the direct fact may be inferred" (1 Bish. Crim. Proc., 2d ed., § 1069), is correct. The word "assumed" is used in the sense of "claimed;" and the plain meaning of the instruction is that the *assumed* or *claimed* facts therein mentioned must be proved before the main fact can be inferred therefrom.

ERROR to the Circuit Court for *Grant* County.

The plaintiff in error was tried upon an information charging that on June 29, 1882, in the county of Grant, he received certain moneys, bills, and notes of the value of $2,800, the property of the United States Express Company, which had theretofore been feloniously and burglariously stolen and taken away by some person unknown; he, the said plaintiff in error, then and there well knowing that the same had been stolen.

It was proved on the trial that on said June 29th the First National Bank of Milwaukee delivered to the agent of the express company a package containing $2,500 in currency, in $5, $10, $20, and possibly one or two $50 or $100 bills, consigned to one A. J. Pipkin, of Boscobel; that the package was transmitted to Boscobel on the same day, and delivered by the express agent on the train to the temporary night operator at that place, who delivered it to the day operator then temporarily in charge of the depot. The latter placed the package in the safe of the express company in the depot office with certain other parcels of money, amounting to a few hundred dollars, and locked the safe. The persons employed about the depot who had access to the safe were the station agent, who was then absent in Iowa, the day operator, who had temporary charge of the depot, and a night operator, temporarily employed to take the place of the regular night operator, who was, or had been, sick, and had not yet returned to duty, although in Boscobel. The safe was furnished with a combination lock. The combinations were three; the numbers were from one to one hundred. The station agent, the day operator and the regular night operator, and they only, had the combination.

After the train which brought the money had passed (which was at 9:35 P. M.), and after the money had been put in the safe, and the safe locked, the temporary night operator locked the depot and left it. The day operator had

left before. The former returned to the depot in about twenty or thirty minutes, and found the depot open and the safe unlocked and open. The money in the safe, including the $2,500 package, was missing, except a package containing $150. The safe was not injured.

At that time the plaintiff in error resided with his family in Boscobel, and had resided there for several years previously, and was there during the evening the money was taken. The testimony tends to show that up to that time he was poor, at times in quite straitened pecuniary circumstances, and that soon after the money was taken his circumstances greatly improved, and he had and expended considerable sums of money. The testimony on this branch of the case is more specifically stated in the opinion.

Afterwards a criminal charge was brought against the plaintiff in error, which had no connection with the taking of this money from the express office, and he was imprisoned thereon in the county jail of Grant county. His father and brother, after an interview with his wife, went to a stable in which the plaintiff in error kept some horses during the summer, dug into the earth at the side of a manger, and found there a package of money — currency — rolled up in a woolen cloth, containing $1,475. The money was damp, and smelled of the stable. They deposited $500 of this money with the clerk of the court, as security for the appearance of the plaintiff in error to answer the charge against him, and he was liberated. His father gave him the balance of the money taken from the stable. He said that it was his money, and that he came honestly by it, but did not say how he obtained it.

The court instructed the jury that the failure of the plaintiff in error to testify as a witness on his trial created no presumption against him; that he was to be presumed innocent until his guilt was established by competent proofs, and no fact necessary to the establishment of his guilt could be

taken as true unless so established; that the jury must regard him as of good standing and character in every respect except as otherwise proved; that the possession of any amount of money by him is not alone sufficient to justify a conviction; that the sudden bettering of his circumstances, and his possession of more money than it was generally supposed he had, if proven and wholly unexplained, are only circumstances of suspicion, and will not justify the jury in convicting him; and that to establish his guilt the jury must be satisfied from the evidence beyond a reasonable doubt — *first*, that the moneys mentioned in the information were stolen; *second*, that he received these same identical moneys, or some part thereof; and, *third*, that when he received such moneys he knew the same to have been stolen. All the above instructions were given at the request of the plaintiff in error, and they were unqualified except by an instruction that the jury might consider a sudden bettering of the circumstances of the accused (if they so found the fact) as an element in the case.

The following instructions proposed on behalf of the plaintiff in error were refused: "(1) A defendant has a right to testify in his own behalf in a criminal case, but he is not called upon to make a defense until some charge against him has been established by competent proof on the part of the state. (2) The possession of money not identified as stolen money raises no presumption whatever against the defendant that he is guilty of receiving stolen money. (3) The possession of stolen money three months after it was stolen raises no presumption that the possessor is guilty of receiving stolen money. (4) There is no testimony in this case that any part of the moneys claimed by the prosecution to have been stolen from the depot in Boscobel on June 28, 1882, ever came into the hands of the defendant. (5) The defendant had a right to keep his money buried in the ground or anywhere else he saw fit, and the mere fact that

he kept money in that way will not by any means justify you in determining that the money so kept was stolen money. (6) There is no testimony identifying a single dollar of the money shown to have been in the possession of the defendant as a part of the money taken from the safe in the Boscobel depot. (7) If the defendant himself stole the moneys mentioned in the information from the depot safe, you must acquit him. He is not here charged with such stealing. (8) If any of the employees of the United States Express Company about the depot, knowing the combination of the safe wherein the moneys mentioned in the information were kept, and having in charge its contents, took such moneys therefrom and converted them to their own use, that would not be stealing, but embezzlement, and in such case the defendant's afterwards receiving such moneys or any part thereof from such employees or otherwise would not be receiving stolen money, and the defendant must be acquitted. (9) If the money mentioned in the information was taken from the safe by some one of the employees of the express company having it in charge, or if it was taken by such employees and never put in the safe, you will find the defendant not guilty. (10) If from the testimony you think there is as much reason to believe that the money mentioned in the information was taken by some one of the employees of the express company having it in charge, as there is to believe that it was taken by somebody else, you will find the defendant not guilty. (11) If from the testimony you think there is as much reason to believe that the defendant himself stole the money mentioned in the information, as there is to believe that he received it after it was stolen by somebody else, your verdict will be, not guilty. (12) Was any money stolen from the depot? If it was taken by an employee of the express company having it in charge, it was embezzled, and not stolen, and the defendant must be acquitted. (13) If the money was stolen by defendant *Jenkins*

himself, he is not guilty of receiving stolen money, as charged, and must be acquitted. (14) The recent possession of stolen property raises the presumption of larceny, and not of receiving stolen property."

The jury returned a verdict of guilty.

For the plaintiff in error there was a brief by *Bushnell & Watkins*, and oral argument by *Mr. Bushnell*.

For the defendant in error there was a brief signed by *Brooks & Dutcher*, attorneys, and by the *Attorney General*, and the cause was argued orally by *Mr. Brooks*.

The following opinion was filed November 6, 1884:

LYON, J. This case was here at the last term of this court on the report of the circuit judge, and it was then held that the court properly directed the information to be amended to aver that the moneys therein mentioned were stolen by some unknown person, and that the verdict was sufficient. 60 Wis. 599. It was stated in the opinion that the original information contained but one count, which was for receiving the stolen moneys. Of course, the same is true of the amended information. Yet the brief of counsel for the prosecution starts out with the proposition that the plaintiff in error was informed against for stealing the moneys as well as for receiving them. This inaccuracy is not important, but it is well to avoid any misapprehension of the real nature and scope of the information.

After the decision on the report, the circuit court proceeded to render judgment on the verdict, and the accused was sentenced to two years' imprisonment in the state prison. He is now suffering such punishment. The case is now here on writ of error. The errors alleged for a reversal of the judgment are all predicated upon the refusal of the court to give the jury the instructions contained in the above statement of facts, asked in behalf of the accused, and upon the instructions given.

Jenkins vs. The State.

Although the proposed instructions are fourteen in number, it is believed they really raise but three questions. These are: (1) Is the testimony sufficient to support a finding that the money found buried in the stable in October was the same money which was taken from the safe of the express company in June? (2) If the accused stole the money, can he be lawfully convicted of feloniously receiving it? (3) If the money was embezzled, can there be a conviction on this information, which only charges a receiving of *stolen* money? These questions will be considered in the order stated.

1. Several of the rejected instructions go upon the theory that, but for the proof of the discovery of the buried money, the accused could not properly have been convicted, and that the verdict of guilty necessarily includes a finding that the moneys dug out of the earth in the stable were part and parcel of such stolen moneys. That is the most favorable theory for the accused, because it eliminates from the case any possibility that the stolen money may have been exchanged for other money, and the latter buried. The case will be considered, however, on the theory of those proposed instructions, and the question is, Does the testimony support a finding that the money found in the stable was parcel of that taken from the safe?

The testimony tended to prove, and is sufficient to justify the jury in finding, the following state of facts: The plaintiff in error was a poor man. His only business for several years before this money was stolen from the express company was trading in horses of an inferior grade, the income from which was very limited. He performed little or no labor. His family consisted of a wife, and three children. He seldom, if ever, had any money except very small sums. It would be difficult to find from the testimony that he ever had $100 at any one time. He possessed but very little property at any time. He was sometimes embarrassed for

want of a little money.   About the middle of March, 1882, he proposed to mortgage his household furniture to one of the witnesses to obtain some goods for his family to live on. Two or three weeks before the money was stolen he wanted to mortgage his bureau and cook-stove for two or three dollars' worth of groceries, and said he had nothing else. Within a very few days after the robbery he was seen to have a large roll of bills, which, a witness thinks, was as large as his wrist.   One of these bills was a $10 bill.   Very soon after the robbery there was a marked improvement in his financial condition.   He paid a small debt that he had run up at a saloon, and afterwards paid cash for what he got at the bar.   He purchased, during the summer, a harness, a wagon, three horses, and a cook-stove, amounting to between two and three hundred dollars, for which he paid cash.   His family were better dressed.   In August he purchased a place of his father, and in October following (but whether before or after the money was found in the stable does not appear) he paid $300 on such purchase, and also $50 borrowed of his father the spring before.   He introduced no testimony on the trial showing or tending to show where he got this money, or from what source he received the money buried in the stable.

It is not objected on behalf of the plaintiff in error that the testimony which tends to prove the foregoing facts was inadmissible, but the contention of his counsel is that the facts themselves (if they existed) are entirely insufficient to support a conviction.   Great stress is laid upon the circumstance that there is no specific identification of the buried money, or of that paid out by the plaintiff in error after the larceny, with the money taken from the express safe. It is not perceived how such identification could be proved unless the consignor of the $2,500 package sent from Milwaukee had preserved the numbers and denominations of the bills contained therein.   It does not appear that this was

done, and it is not claimed that the usual course of business requires it to be done. It sufficiently appears that the package contained currency — that is, bank bills or treasury notes, and that the money buried in the stable was of that character. Hence there seems to be as specific an identification as the nature of the property stolen admits of. The case presents the same difficulty in this particular as it would if the stolen property consisted of wheat or any other commodity each parcel of which is like every other parcel. In all such cases proof of identification, if made at all, must be made by showing other facts and circumstances from which the jury may find the identity, in the absence of specific or conclusive proof thereof. The question here is whether the above facts and circumstances which the evidence tends to prove are sufficient to identify the money found in the stable, which the plaintiff in error received and claimed as his own (and which, manifestly, he buried there), as the same money which was taken from the safe of the express company.

In *Comm. v. Montgomery*, 11 Met. 534, the indictment was for the larceny of a trunk, taken from a stage coach, containing bank bills, among which were five $100 bills of the Concord Bank. It was proved that the defendant presented at the Brighton Bank two bills of the Concord Bank of that denomination, one on March 23, 1846, and the other on April 13th of the same year. The larceny was committed December 5, 1845. There was some testimony tending to identify the bills so presented at the Brighton Bank as two of the bills that were in the stolen trunk. Testimony was received as to the business and financial condition and transactions of the defendant both before and after the larceny. The case was submitted to the jury in two aspects: *first*, on the theory that the bills were identified; and, *second*, on the theory that they were not. The defendant was convicted, and the conviction was affirmed on the ground that

although none of the bills were identified, yet evidence was admissible to prove that the defendant, after the larceny, was in possession of two $100 bills like those proved to have been stolen, and also of a large amount of other bank bills; and that such evidence, together with evidence that the defendant was destitute of money before the larceny, might be submitted to the jury, to be considered by them, in connection with other accompanying circumstances indicative of his guilt. It was said of this case, in *Boston & W. R. R. Corp. v. Dana,* 1 Gray, 83, 102, that "the possession of a large amount of money, several weeks after the alleged criminal act, not identified as the stolen property, in connection with the previous poverty of the defendant, was admitted as tending to prove a single act of larceny."

*State v. Grebe,* 17 Kan. 458, is a case very much like the present one, except that the defendant was prosecuted for the larceny of, instead of receiving, the stolen property. In that case the stolen property was money, mostly treasury and bank notes. The testimony of the defendant's poverty before the larceny, and his improved financial condition after, was scarcely as strong against him as is the testimony of the same character against the plaintiff in error in this case. There were some circumstances peculiar to that case, proved on the trial, which may have tended to connect the defendant with the larceny, but they were very slight and unsatisfactory. Still the defendant was convicted, and the conviction was sustained. It is said, in the opinion by BREWER, J., that "the case against the defendant, it must be admitted, is not as strong as some that are brought here. The inference of guilt does not flow from the circumstances with such absolute and irresistible certainty as we sometimes find. But still the evidence was sufficient." We think this a stronger case, in its facts, against the plaintiff in error, than was that case against the defendant.

We have been referred to no case, and are not aware of any,

which holds that the trial judge should instruct the jury that the facts which the testimony in this case tended to prove, standing alone, are insufficient to justify a conviction. Neither do we recall any rule of law which leads to that result. It seems to us that the cases above cited were correctly decided on principle. Any other rule would render it practically impossible to convict any guilty person for the larceny of property which is of a character that does not admit of specific identification, or of receiving such property knowing it to have been stolen. Take an illustration: A person is in straitened circumstances, and has been for years. He has a family to support. He has frequently obtained bread for his family with the utmost difficulty. He never raised any wheat, and never dealt in it to an extent exceeding a few bushels at a time, and was never known to have in his possession but a small quantity at any one time. At a given time one hundred bushels of wheat are stolen from the granary of a neighboring farmer. No other person in that vicinity has lost any wheat. Soon thereafter it appears that the person mentioned has plenty of wheat for his family and sells wheat. He was in the neighborhood when the wheat was stolen. Three months after the theft fifty bushels of wheat are found secreted upon his premises. He says he came by it honestly, but fails entirely to tell when, where, or how he obtained it. There can be no specific identification of the property. No witness can say that the wheat which such person sold or which was found on his premises was that which was stolen from the granary. Yet can it be doubted that the proof of those facts is sufficient to justify a jury in finding that the identity was established, and that the person in whose possession the wheat was found committed the larceny? We think not. We can perceive no difference in principle between the case supposed and the present case.

The failure of the plaintiff in error to show where he ob-

tained the money found in his possession is a very important element in the case. If he obtained it honestly (as he said he did) — if it was not the money taken from the safe of the express company — he could easily have shown the fact, and the instinct of self-preservation would have prompted him to do so. Others, or at least some other person, must have been concerned in transferring the money to him. The transaction necessarily required more than one actor. Yet, when he became involved in a net of circumstances pointing to his guilt, he furnished no explanation. His silence, when he might so easily have relieved himself of the peril of conviction, if the money found in his possession was not that taken from the safe of the express company, is a most significant circumstance, and could not have failed to impress the jury (and justly so) with the conviction that it was the same money. To hold that such evidence is insufficient to sustain a conviction either for the larceny, or, if that is disproved, for receiving the stolen property, would be, as it seems to us, to ignore the logical and irresistible inference which should be drawn from the facts proved.

The foregoing remarks do not violate the statutory rule that his omission to testify as a witness on his trial creates no presumption against the plaintiff in error. R. S. sec. 4071. The court gave the jury that rule. The presumption against him is not caused by his omission to testify, but by his failure to account for the possession of so much money. It may as well be remarked here that the first proposed instruction contained in the above statement of the case, which the judge refused to give, was unnecessary after the judge had correctly stated the statutory rule. In the instruction given the jury were substantially told that the accused could not be called upon to testify unless he chose to do so. This was sufficient, and it was not error to refuse to repeat the instruction in another form.

Much was said in the argument concerning the presump-

tion arising from the possession of stolen property. The learned counsel for the plaintiff in error maintained that to give any force to the presumption the possession must be recent after the larceny, and that it arises only in a prosecution for the larceny, and not in a prosecution for receiving the stolen property. It is quite true that in such cases the presumption of criminality is weakened by the lapse of time intervening between the larceny and the discovery of the goods in the possession of the accused. But this term "recent" is a relative term, and a time which might be considered recent under one state of facts would not be so under another and different state of facts. Here the money was not found until more than three months after it had been stolen, but the conditions existing when it was found tend to show that it had been in the possession of the accused a considerable length of time. Moreover, the presumption of guilty connection with the larceny is strengthened by the facts that from a time soon after the money was taken the accused had in his possession and expended unusually large sums of money, and there is no explanation of the sources from whence he received them. The proposition that the possession of stolen goods raises no presumption of guilt against a person charged only with feloniously receiving them, has no foundation in principle or authority. Archb. Crim. Pl. & Ev. 474.

After most careful consideration of the whole subject, we are impelled to the conclusion that the evidence is sufficient to sustain the conviction.

2. It is claimed on behalf of the plaintiff in error that there is as much evidence to show that he stole the money as that he feloniously received it after it was stolen; and that if he stole it, he cannot be convicted of receiving it. Several of the proposed instructions express these views. The evidence shows conclusively that the plaintiff in error did not steal the money; or, at least, that he was not the

Jenkins vs. The State.

principal felon. The safe had a combination lock, and was locked. The money was obtained by unlocking it. There is no claim or pretense that he knew the combination of the lock, without which knowledge the safe could not be opened. It must, therefore, have been opened by some other person. It may be that the plaintiff in error was present, and assisted in the theft; but, if he was, it is no impediment to a conviction for receiving the stolen property, if some other person assisted, as must have been the case here. In *Rex v. Dyer* and *Rex v. Atwell*, 2 East, P. C. 767, 768, in which the larcenies were committed under circumstances the same in principle as those existing here if the accused was present when the money was taken, the defendants were convicted of the larcenies; but it seems to have been conceded on all hands that they were guilty of feloniously receiving the stolen goods as well, and the contention was that they could be convicted of that offense only. And so the learned author of the treatise last above quoted (Archbold) understood those cases. Speaking of prosecutions for receiving stolen goods, he says: "If it be proved that the defendant not only received the articles, but also assisted in stealing them, he may still be convicted, provided that some other person assisted in the theft;" and cites thereto the above cases. (Page 475.) Hence we are not called upon to determine what the law would be were there any evidence tending to show that the plaintiff in error alone committed the larceny.

3. It is further claimed that the evidence raises some presumption that the money was taken from the safe by some employee of the express company, and, if so, that it is embezzlement and not larceny. Hence it is claimed that the plaintiff in error cannot be convicted of feloniously receiving *stolen* money when the money was not stolen at all. Some of the rejected instructions present this view of the case.

The trouble with this proposition is in the premises upon which it is based. In no possible view of the evidence was this money embezzled. The offense of taking it, no matter by whom, was larceny and nothing else. The reason is that the money was in the possession of the express company. No person was clothed with the possession of it, or any trust over it, except to deliver it to the consignee. No agent of the express company or any other person could remove it from the safe for any other purpose without committing trespass, and if he removed it therefrom *animo furandi* every element of larceny entered into the act. Thus Blackstone says: "If the carrier opens a bale or pack of goods, or pierces a vessel of wine, and takes away any part thereof, *or if he carries it to the place appointed and afterwards takes away the whole*, these are larcenies." 2 Bl. Comm. (Cooley's ed.), 230. Much more is this so when the property has arrived at its destination and is taken by a mere servant of the carrier. The rule is elementary, and requires no citation of authorities to verify it. References to scores of them may be found in any treatise on the subject.

4. Exceptions are preserved to various portions of the general charge to the jury. Many of these have been disposed of in the preceding discussion. But one remains which it is deemed necessary to notice. The charge contains the following passage: "Circumstantial evidence is a species of presumptive evidence, and it consists in this, that where there is no satisfactory evidence of the direct fact, certain facts which are assumed to have stood around or been attendant on the direct fact are proved, from the existence of which the direct fact may be inferred." This instruction was taken literally from 1 Bish. Crim. Proc. (2d ed.), § 1069. The criticism on this passage is founded mainly on the employment therein of the word "assumed," and it is claimed that the instruction authorized the jury to assume the existence of facts which were not proved. Clearly,

the language employed admits of no such construction. The word "assumed" is evidently employed in the sense of "claimed;" and the plain meaning of the passage is that the *assumed* or *claimed* facts therein mentioned must be proved before the main fact can be inferred therefrom.

Finding no material error disclosed in the record, we must affirm the judgment of the circuit court.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied January 13, 1885.