STATE OF IOWA, Appellee, v. JOHN PERRY, Appellant.

**Criminal law:** BREAKING AND ENTERING BUILDING.  The pushing open of
1    a closed but unlocked door, or the pushing open of an inner door in
a house which is closed, and an entry thereby made is sufficient to
constitute the crime of breaking and entering.  In the instant case
the evidence is held to support a conviction.

**Same:** BURGLARY: RECENT POSSESSION: EVIDENCE.  The possession of
2    property not ordinarily sold daily, but recently stolen from a build-
ing and securely locked in a receptacle of which defendant was the
sole and exclusive owner, to which he provided a lock and carried the
key, if unexplained, is sufficient to justify a finding that defendant
was the person who committed the crime of burglary; and under the
facts shown justified a finding that defendant's possession was recent.

**Same.** Defendant's conduct when arrested and the fact that he was
3    armed may be shown as evidence of his guilt; and upon identifi-
cation the formal introduction of the revolver taken from him at the
time of arrest was not prejudicial.

**New trial:** MISCONDUCT IN ARGUMENT.  Reference by the county attorney
4    in his closing argument to the presence of defendant in the room in
the night time with a gun like that in evidence, though improper was
not prejudicial; and his further reference to the fact that the evi-
dence for the state was uncontroverted was not within the prohibition
of the statute.

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

TUESDAY, JANUARY 27, 1914.

DEFENDANT was indicted, tried, and convicted of the
crime of breaking and entering, and, from the judgment im-
posed, appeals.—*Affirmed.*

*Thos. Q. Harrison* and *H. J. Chambers,* for appellant.

*Geo. Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

DEEMER, J.—The cellar of a dwelling house belonging to J. J. Hughes, in the city of Council Bluffs, was entered on the night of December 17, 1912, and a hunting coat, sweater, a pair of hunting trousers, hunting socks, leather waders, a hunting axe, butcher knife, some beer, and some canned fruit was taken therefrom. On January 4, 1913, a search warrant was sworn out and the house and premises of one McBee, in Council Bluffs, were searched, and in the house and in a completely covered wagon, equipped with a door which was fastened with a padlock, which wagon was owned by the defendant, certain goods, which were identified by witnesses as a part of those stolen from the cellar, were found. The hunting coat, an axe and butcher knife were found in the wagon, and other articles were found at the McBee house. On January 7, 1913, at about 10:25 p. m., the defendant was arrested in the Union Pacific Transfer waiting room in the city of Council Bluffs, and the following is an account of that arrest:

Defendant was in the southeast corner of the waiting room by himself. There were several other people in the other part, and I walked in and around, and noticed him over in the corner, and from his appearance I thought that it was him. I had been looking for him for several days, that is, three or four. I got close to him, pulled my gun on him, asked him to raise his hands, that he was under arrest. I threw my coat open, and he made a dive for his left. I threw my coat open to protect myself, knowing that I was an officer, saw that he did not know that I was an officer, to show my star. I told him I was looking for him three or four days. I said, 'Do you know me?' 'No,' he says, 'You don't know me you mean.' I says, 'You are John Perry, and you get that hand away from there,' and I threatened to shoot him if he did not. And it took him three or four minutes then, before he finally did. I took the gun away from him, threatened to kill him. His right hand was then just above his coat pocket. He dropped it down on top of his gun. I

grappled his pocket and gun with my left hand, and at the same time holding my gun, threatening to shoot him. We were thus grappling about four minutes. Perry said he did not know me when I came in the door, or he would have fixed me. I put the handcuffs on one of his hands. I had taken the gun away from him and searched him, so that he didn't have another, and let him off where I met Officer Arnold. I recognize Exhibit 6 as the gun that I got from defendant, John Perry, that night. There were five cartridges in it.

As a result of a search of defendant's effects, a key was found which fitted and unlocked the padlock on the door of the wagon in which some of the stolen goods were found. This key was identified and produced on the trial. The defendant purchased the wagon, in which the stolen property was found, from a man in Omaha on December 12th; and he brought it across the river to the McBee place, where he boarded, on December 15th, and left it there until the time of his arrest, when he was taken in charge by the police. He seems to have been in the exclusive possession thereof; for it was his, and he carried the key to the door thereof.

The manner in which the house was entered is shown by the following testimony:

There is an outside door at the north part of the house, commonly known as an outside cellar door, that lifts up, raises from the walls. That door leads to the cellar way, and there are steps leading into the cellar proper, and at the bottom of these steps, there is a door, and that door was entered and opened by whoever went in there. There is another door in a partition where the fruit is kept, that is fastened with a spring lock. If you open that door, it will close itself, unless it is latched open. The door at the foot of the stairs and this partition door were both closed on the evening of the 17th of December, 1912. There are electric lights in the cellar. They were not lighted when I went to bed about 10 p. m. I first discovered the loss of the goods at 7 a. m. The lights were then lighted. 'That door' [leading into the second cellar] was also opened, and that is where the stuff was gotten out of.

This is the record upon which defendant was convicted; and it is contended that it is insufficient in that the testimony fails to show the *corpus delicti,* and fails to sufficiently connect the defendant with the commission of the offense.

Upon the first proposition, there is little or no doubt that the cellar was entered by a breaking, as the term is used in the law. The pushing open of a door which is closed, but not locked, or the pushing open of an inner door in a house which is closed, and an entry thereby is a breaking and entering within the meaning of the law. The testimony shows that two doors were opened by whoever entered the house and stole the goods.

1. CRIMINAL LAW: breaking and entering building.

It is further claimed that the testimony is insufficient to justify a finding that the defendant is the guilty party. A finding of some of the goods at McBee's house would not be sufficient, of course, to convict the defendant; for other persons than he were the rightful occupants thereof, and had as much, if not more, control thereof as did the defendant. But defendant was the sole and exclusive owner of the wagon, and held the key to the padlock by which the only door to the wagon was opened. It was his wagon, and he not only supplied it with a lock, so that nobody but himself could enter, but personally carried the key to the wagon. Some of the stolen goods were found in the wagon, and they were not of a kind to be the subject of ready sale. In other words, the goods found in the wagon belonged to a hunter's outfit, and were not the stolen canned fruit or beer, which might be subject to ready sale and transfer.

2. SAME: burglary: recent possession: evidence.

But it is said, that, conceding all this, the testimony is insufficient because the possession of the goods was not "recent," and the finding thereof is not enough to connect the defendant with the offense. The testimony shows that the goods were taken at the time of the breaking, and was sufficient to justify a jury in finding that whoever committed the breaking and entering also committed the larceny. In

other words, the two acts were done at the same time and by the same person. If the stolen goods, or a part of them, were found in the possession of the defendant recently after the larceny, this, in and of itself, would be enough, if his possession was unexplained, to justify a jury in finding that he was the man who committed the crime charged. This is a very familiar proposition of law for which no citation of authority is necessary. The only question there is, Was defendant's possession recent? Such an inquiry, as a rule, is for the jury, and much depends upon the circumstances of each particular case. The time which elapsed here was a little less than three weeks. The goods were not such as are ordinarily sold daily, and not such as easily pass from hand to hand, because they usually appeal to but a small proportion of the community, and were intended for a special purpose. They were kept in a covered wagon which had not been in use, and there is nothing to indicate that they were designed for use about the wagon. A jury was justified in finding that defendant's possession was recent. *Jenkins v. State,* 62 Wis. 49 (21 N. W. 232); *Commonwealth v. Montgomery,* 11 Metc. (Mass.) 534 (45 Am. Dec. 227); *State v. Miller,* 45 Minn. 521 (48 N. W. 401).

In addition to this, the defendant's conduct at the time of the arrest is a suspicious circumstance against him, adding to the presumption arising from the finding of the goods in his possession. The arrest was made but two 3. SAME.    or three days after the search, and the officers had been on the lookout for him during all that time. Defendant's conduct at that time was that of a man who knew that he was under suspicion by reason of the finding of the goods in the wagon, and his actions were those of a guilty man. This testimony added much to the presumption arising from the finding of the property. The testimony as to the finding of the revolver on defendant's person, and the identification thereof before the jury, was not objected to, but, when it was

offered in evidence with the other exhibits, a general objection was lodged against all the exhibits.

It was entirely proper to show that defendant was armed when arrested, and the formal introduction of the weapon in evidence, after it had been identified by the witness, was not prejudicial in any respect. That the testimony as to defendant's being armed was admissible, see *State v. Clark*, 160 Iowa, 138.

Misconduct of the county attorney in his argument to the jury is complained of. Among other things, he said:

Think of awaking in the night and finding a man like that (defendant) in your room with a gun like that (indicating revolver).

That wagon was his, bought or traded for, just a few days before the burglary. He had the key to the lock of that wagon, so there can be no question but he had possession of these goods and, if he does not explain, or if the evidence in this case does not raise in your minds a reasonable doubt of whether he came into possession honestly or not, then you are justified in finding a verdict of guilty of burglary.

4. NEW TRIAL: misconduct in argument.

Now, I am not going to take up so much of your time arguing this case. The defendant has put in no witnesses.

What you gentlemen want is facts upon which to base your verdict. You want to know the interpretation of the state upon the testimony, as an aid to you in forming your own opinion. . . . If there was any denials here, we might put our side of it up, but there is only one side so far as the testimony goes in this case, so there isn't much reason for an extended argument in this case.

Counsel in his zeal may have stepped a little aside the mark in his first statement; and came to the border in his last one, but the former we do not regard as prejudicial, and the latter is held not erroneous in some of our late cases. See *State v. Snider*, 119 Iowa, 15; *State v. Hasty*, 121 Iowa, 507, and cases cited.

Some of the instructions are complained of, but we find

no error therein.   There being no prejudicial error in the record, the judgment must be and is—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.