## KASLE v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.    June 13, 1916.)

No. 2730.

1. RECEIVING STOLEN GOODS ☞7(1)—INDICTMENT—SUFFICIENCY.

An indictment charging that accused did unlawfully and feloniously receive goods and chattels which had been a part of an interstate shipment of freight and were stolen in the course of shipment sufficiently charges that the goods and chattels were interstate commerce and had not lost their character as such, so as to bring the offense within Act

---

Feb. 13, 1913, c. 50, 37 Stat. 670, making it an offense to receive, knowing the same to have been stolen, chattels moving as or which constitute an interstate or foreign shipment.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 9; Dec. Dig. ☞7(1).]

**2. RECEIVING STOLEN GOODS ☞3—OFFENSES—SUFFICIENCY.**

Under Act Feb. 13, 1913, declaring that whosoever shall steal, unlawfully take, or carry away goods or chattels which are part of an interstate or foreign shipment, or shall receive or have in his possession any such goods, knowing them to have been stolen, shall be punished, one knowingly receiving stolen goods does so at the peril of their having been stolen while in the course of interstate shipment, and it is no defense to a prosecution that he did not know they were so stolen.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 5; Dec. Dig. ☞3.]

**3. LARCENY ☞32(5)—PRESUMPTION—ESSENTIALS.**

Specific ownership must be alleged and proven, but an averment of a special property, such as that of a bailee or carrier, in the goods stolen, is sufficient allegation of ownership for an indictment for larceny.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. § 85; Dec. Dig. ☞32(5); Indictment and Information, Cent. Dig. §§ 281, 282.]

**4. RECEIVING STOLEN GOODS ☞7(5)—INDICTMENT—SUFFICIENCY.**

A prosecution for receiving stolen goods stands in some respects on the same footing as one for larceny, and an allegation of a special property right in a bailee or carrier of the goods which were stolen and received by accused is sufficient.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 13; Dec. Dig. ☞7(5).]

**5. RECEIVING STOLEN GOODS ☞7(5)—DELIVERY TO CARRIER—EFFECT OF.**

As the delivery of goods to a carrier is delivery to the consignee, in the absence of agreement to the contrary, an indictment under Act Feb. 13, 1913, for receiving goods stolen while in an interstate shipment, which averred the name of the consignees, sufficiently declares the ownership of the goods.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 13; Dec. Dig. ☞7(5).]

**6. CRIMINAL LAW ☞1186(4)—REVERSAL—DEFECTIVE INDICTMENT—STATUTE.**

An indictment charging that accused knowingly received goods which had been part of an interstate shipment and had been feloniously taken and carried away from a railroad station house at Toledo known and described as the "New York Central Terminal Freight Station," and that the goods were consigned to consignees, naming them, is sufficient, in view of Rev. St. § 1025 (Comp. St. 1913, § 1691), declaring that an indictment shall not be held bad for errors not prejudicial to accused, to charge the offense of receiving stolen goods while part of an interstate shipment, denounced by Act Feb. 13, 1913, though the name of one of the consignees indicated that it was a partnership, and there was no averment of title of any of the partners, and the name of the owners of the freight house was not given, for, the freight house being a fixed and permanent object, the ownership of the goods and particulars of the offense were sufficiently alleged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3215; Dec. Dig. ☞1186(4).]

**7. CRIMINAL LAW ☞753(2)—TRIAL—MOTION FOR DIRECTED VERDICT.**

A motion for directed verdict at the end of the government's case is waived by accused's introduction of evidence; but such waiver does not

deprive him of the right to have the sufficiency in law of the entire evidence considered upon similar motion made at the close of all testimony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1727, 1729; Dec. Dig. ☞753(2).]

8. RECEIVING STOLEN GOODS ☞2—WHAT CONSTITUTES—LARCENY.

Where tallymen employed by a railroad were required to check freight in and out of cars, the freight did not pass into their possession, so that their wrongful appropriation would amount merely to embezzlement; but such appropriation is larceny, and one knowingly receiving goods so appropriated is, where they were part of an interstate shipment, guilty of the offense of receiving goods stolen while part of an interstate shipment, denounced by Act Feb. 13, 1913.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 4; Dec. Dig. ☞2.]

9. RECEIVING STOLEN GOODS ☞9(2)—PROSECUTION—INSTRUCTION.

In a prosecution, under Act Feb. 13, 1913, for knowingly receiving stolen goods while part of an interstate shipment, a charge directing the jury to find whether the goods were articles of interstate transportation, whether they were stolen while in the course of such transportation, whether defendant received them, and, if he did so, whether he received them knowing them to be stolen which allowed a finding that accused knew the goods were stolen if the circumstances were such that a reasonable and honest man would have doubted his transferors' title, *held* erroneous, because allowing the jury to convict accused, regardless of his own intention in receiving the goods, if the circumstances were such that a reasonable man would have doubted the title of his transferors.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 20; Dec. Dig. ☞9(2).]

10. RECEIVING STOLEN GOODS ☞8(4)—OFFENSES—CIRCUMSTANTIAL EVIDENCE.

In a prosecution for receiving stolen goods, the fact that accused took them knowing them to be stolen may be established by circumstantial evidence.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 18; Dec. Dig. ☞8(4).]

11. RECEIVING STOLEN GOODS ☞8(1)—POSSESSION—EFFECT OF.

In a prosecution under Act Feb. 13, 1913, for knowingly receiving goods stolen while in interstate shipment, an instruction that the possession of stolen property imputes knowledge in the possessor that it was stolen, unless the possessor explains, is improper; the offense not being that of larceny, but of receiving stolen goods, in which case the question at issue is defendant's knowledge, and no presumption is raised by his possession of the stolen property.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. § 18; Dec. Dig. ☞8(1).]

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Sam Kasle was convicted of unlawfully having in his possession goods and chattels, knowing them to have been stolen from a railroad freight station while in the course of shipment in interstate commerce, and he brings error. Reversed and remanded.

H. W. Fraser and Marshall & Fraser, all of Toledo, Ohio, for plaintiff in error.

E. S. Wertz, U. S. Atty., of Cleveland, Ohio, and John S. Pratt, Asst. U. S. Atty., of Toledo, Ohio.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge. Kasle was convicted and sentenced under an indictment charging him with unlawfully and feloniously having in his possession certain goods and chattels, knowing them to have been stolen from a railroad freight station while in course of shipment in interstate commerce. A motion to quash the indictment was overruled. At the close of the evidence offered by the government, the defendant moved that the evidence be withdrawn and a verdict directed in his favor, and the motion was denied. Again at the close of all the evidence defendant renewed his motion for a directed verdict on the ground that there was no evidence to sustain the allegations of any of the counts of the indictment, which was granted as to the first count and overruled as to the second and third counts. Aside from the ruling upon the first count, exception was reserved and error assigned upon each of the rulings mentioned; and some twenty additional assignments are presented upon exceptions reserved in the course of the trial concerning rulings in admitting and rejecting testimony and certain instructions contained in the charge to the jury. Defendant prosecutes error.

1. The motion to quash the indictment is based on six grounds, the first four of which are in substance that at the time the goods and chattels are alleged to have been in defendant's possession it does not appear in any of the counts (a) that defendant knew they had been stolen, taken or carried away from interstate commerce, (b) that they were interstate commerce or a part thereof, (c) that they retained their character as an interstate shipment of freight, (d) that they had not lost their character as part of interstate commerce; and the two remaining grounds are (e) that the indictment and the counts respectively do not with sufficient certainty describe the offense charged so as fairly to inform defendant of its nature and of what he would be called upon to meet, and (f) that the indictment and counts do not state facts sufficient to constitute an offense against the United States.

[1] The indictment is based on an act of Congress passed February 13, 1913 (37 Stat. 670). The applicable portion of this statute is as follows:

" * * * Whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as, or which are a part of or which constitute, an interstate or foreign shipment of freight or express, or shall buy, or receive, or have in his possession any such goods or chattels, knowing the same to have been stolen, * * * shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both."

The indictment contains three counts; but as count 1 was in effect eliminated, as stated, it is necessary to consider only counts 2 and 3. Except as to dates of the offenses charged, the kinds and the points of origin and destination of the goods and chattels involved (the second count describing ten pigs of tin, comprising about 1,119 pounds, and the third, two barrels of scrap brass), the two counts remaining

are alike; the second count is printed in the margin.[1]  Comparison of the allegations of the count with the first four grounds stated in the motion to quash will show these grounds to be without merit, since defendant was charged with knowingly, and so unlawfully and feloniously, having in his possession distinct goods and chattels which had been stolen, taken and carried away, from a named railroad station in Toledo, Ohio, while in course of shipment in interstate commerce between points named in the counts.  It is true, as the first ground of the motion to quash states, that it is not charged that at the times the goods and chattels are alleged to have been in his possession defendant knew they had been stolen from interstate commerce.

[2] As we interpret the statute such an allegation is not necessary. One who knowingly receives stolen chattels must do so at the peril of their having been stolen while in course of interstate transportation; indeed it is not perceived why the thief should escape conviction under this statute just because he did not know the points of origin and destination.  Manifestly both the receiver and the thief are chargeable with knowledge of the act of Congress forbidding this particular theft, quite as certainly as they are of a state statute prohibiting theft generally.  The status of the articles, in the sense of being interstate or intrastate in character, cannot in the nature of things affect the fact either of the stealing or receiving alleged; and the statute, whether federal or state, is at bottom aimed against stealing or receiving.  The most then that can be said of the object of allegation, as well as proof, touching the interstate character of the articles is to show the existence of the condition which brought the subject within the federal power and jurisdiction.

[3-6] The last two grounds of the motion to quash, however, present some difficulties.  Ownership of the goods and chattels described in counts 2 and 3 is not in terms laid in any particular person or company, either by absolute or qualified title, at the times the articles were severally alleged to have been "feloniously stolen, taken and carried away from a certain railroad station house  *  *  *  known and de-

---

1 "Count II.  And the grand jurors aforesaid, upon their oath aforesaid, do further present and find that the said Sam Kasle, heretofore, to wit, on or about the 7th day of September, in the year of our Lord one thousand nine hundred and thirteen, at the city of Toledo, Lucas county, Ohio, in the division and district aforesaid, and within the jurisdiction of this court, unlawfully and feloniously did knowingly have in his possession certain goods and chattels, to wit, ten pigs of tin consisting of about eleven hundred and nineteen pounds of tin, which said goods and chattels had theretofore, to wit, on or about the 7th day of September, 1913, been a part of an interstate shipment of freight in course of shipment in interstate commerce, and had been unlawfully and feloniously stolen, taken and carried away from a certain railroad station house at Toledo, in the county of Lucas, Ohio, known and described as the New York Central Terminal Freight Station, at Toledo aforesaid, while said goods and chattels were so in course of shipment in interstate commerce from the Pope Metals Company, at New York, in the state of New York, to the Union Steel Screen Company, at Albion, in the state of Michigan, he, the said Sam Kasle, at the time and place aforesaid, when as aforesaid he so unlawfully and feloniously had the said goods and chattels in his possession, well knowing the same to have been stolen—contrary to the form of the statute of the United States in such case made and provided, and against the peace and dignity of the United States."

scribed as the New York Central Terminal Freight Station." Neither the name of the owner of the station, nor any excuse for its omission, is to be found in the counts. Presumably the owner of the station held an interest in the goods and chattels which was sufficient for all purposes of the indictment. The rule is that specific ownership must be alleged and proved; but a special property, such as that of a bailee, carrier, or the like, in goods stolen, is sufficient for purposes of an indictment, say for larceny (2 East's P. C. 652; 1 Wharton Crim. Law, § 932; Wharton American Crim. Law, pp. 657, 658; Darter v. Commonwealth, 5 S. W. 48, 9 Ky. Law Rep. 277, 278; Commonwealth v. Finn, 108 Mass. 466, 468; Commonwealth v. Rubin, 165 Mass. 453, 454, 43 N. E. 200; Allen v. State, 134 Ala. 159, 165, 32 South. 318); and in this respect there is no difference in principle between the offense of larceny and that of receiving stolen goods (3 Bishop's New Crim. Procedure, § 982); indeed, in his treatment of the subject of indictments for receiving stolen goods, Mr. Bishop says: "The owner's name is essential in identification; hence to be stated if known". (Id. § 983; State v. McAloon, 40 Me. 133, 135; State v. Polland, 53 Me. 124, 125; Miller v. People, 13 Colo. 166, 167, 21 Pac. 1025; Brothers v. State, 22 Tex. App. 447, 462, 3 S. W. 737; Zweig v. State [1913] 74 Tex. Cr. R. 306, 171 S. W. 747, 749); and the rule so laid down by Bishop is in effect recognized in Kirby v. United States, 174 U. S. 47, 61, 19 Sup. Ct. 574, 43 L. Ed. 809, where contention that the indictment was defective because it did not allege ownership by the United States of the stolen articles at the time they were alleged to have been feloniously received by the accused, was denied, but the reason given was that the indictment alleged the articles to be "the property of the United States." The present counts 2 and 3 do, however, name the consignees of the goods and chattels in question, the name stated in the second being Union Steel Screen Company, and in the third, Koblitz, Kohn & Company; and ordinarily this would be sufficient for all purposes of identification of the articles in dispute and so of the indictment, since delivery to a common carrier is delivery to the consignee, in the absence of agreement to the contrary, even though the carrier is not designated by the consignee. Commonwealth v. Sullivan, 104 Mass. 552, 554. But here again objection is urged, and for the reason that the consignees' names are indefinite, in that they may be either corporations, joint-stock associations or partnerships.[2] An objection of this character, certainly as respects the present second count, was recently disallowed in Morris v. United States (229 Fed. 516, 520, —— C. C. A. ——, and citations [C. C. A. 8]), when the court was considering an indictment based on the statute involved in the instant case and a failure to allege therein that the railway company, owning the car from which the property was stolen, was an incorporated company. We agree with the ruling there made, that in view of section 1025, Rev. Stat., such an allegation was unnecessary, since, as the court said (229 Fed. 520, —— C. C. A. ——):

[2] Reliance being placed by counsel on State v. Suppe, 60 Kan. 566, 567, 57 Pac. 106, and State v. Pollock, 105 Mo. App. 273, 277, 79 S. W. 980, among other citations.

"We are unable to see how that omission can have any tendency to the prejudice of the defendant." And see ruling of court in Burke v. State of Ohio, 34 Ohio St. 79, syl. 1, and opinion of the late Judge Okey, 81, 82.

Furthermore, since the consignee named in the third count, Koblitz, Kohn & Company, is seemingly a partnership, and since ownership of the property described is not laid in the name of any person purporting to be a partner, it may be well to look further into the statute itself. While such objections as we have been considering might be avoided, and ought to be, through careful preparation of indictments, still it is plain enough that the act of Congress here involved was not intended to require strict observance of either all the rules of the common law upon the subject of certainty in criminal pleading, or those growing out of distinct statutes which were intended to change and modify many of such rules. It is to be observed, too, that the relevancy or not of decisions, which in large measure are controlled by local statutes, is to be tested by comparison of those statutes with the particular statute in issue. The act now in question is designed to protect articles while in course of interstate shipment. When the articles of freight now in dispute are considered in connection with their points of origin and destination and the "railroad station house," as such points and station are described in the counts, it is clear that for purposes of the indictment the freight articles are to be treated as having been "in course of shipment in interstate commerce" at the times they are alleged to have been stolen; and it is equally clear that when defendant was required to meet the allegations charging him with having possession of the articles his opportunities for identifying them were quite as available as they would have been if title to the articles, and also to the station, had been laid in the name of the owner of the station. The station was the natural place for the custody and control of such articles until the movement toward their fixed destinations should actually be resumed; and the charge made in the indictment that the goods were "stolen, taken and carried away" from this station, may be said to have followed the language of the statute. A statute and an indictment somewhat similar to the statute and indictment here involved were under consideration in United States v. Coombs, 37 U. S. (12 Pet.) 72, 9 L. Ed. 1004. It is true, however, that the court was there called upon to determine only a question of jurisdiction which arose under the indictment; the act forbade any person to (37 U. S. [12 Pet.] 74, 9 L. Ed. 1004)—

"plunder, steal or destroy any money, goods, merchandise, or other effects from, or belonging to, any ship or vessel, * * * which shall be in distress, or which shall be wrecked, lost, stranded or cast away, upon the sea, or upon any reef, shoal, bank, or rocks of the sea, or in any place within the admiralty or maritime jurisdiction of the United States."

Although the question of ownership, with which we are now concerned, did not arise in that case, it is noteworthy that the indictment is there stated (37 U. S. [12 Pet.] 74, 9 L. Ed. 1004) to have charged that the merchandise stolen "belonged to the ship Bristol, the said ship then being in distress," etc. (Id.). It hardly is to be inferred that

absolute title to such merchandise was in the owner of the ship, though the merchandise might well have been in the custody and control of the ship for purposes of transportation; and since no question concerning the form of the indictment was certified it is to be presumed that the allegation that the merchandise "belonged" to the ship was open to such an interpretation as this and also was regarded as sufficient to identify the stolen articles and so to sustain the indictment. We are led to believe upon the whole that wherever the place of custody and control of articles of interstate freight alleged to have been stolen therefrom falls within the language of the statute and is permanent in character and adapted and generally used for such custody and control, like a railroad station, it is not essential to the validity of an indictment similar in object to the present one that ownership in either the place or the articles be distinctly alleged (State v. Casavant, 64 Vt. 405, 407, 23 Atl. 636); and this is for a stronger reason than can be ascribed even to a distinctive though stranded ship like the Bristol. These views will not of course be interpreted to apply to a movable place of custody, such as a freight car, from which goods claimed to have been stolen and subsequently feloniously received in possession are made the subjects of indictment. The necessity for applying the rule of identification in that kind of a case may be conceded, for the reason that a place of custody described only as a freight car would imply no such distinct identity as does a freight terminal station in a city; but plainly that reason can have no application here. It was necessary, it is true, that the elements of the offense charged should be stated with such particularity as fairly to apprise defendant of what he must meet, and in the event of conviction or acquittal to enable him to plead the indictment in bar of any subsequent prosecution for the same offense; and these requirements we think were sufficiently met (Armour Packing Co. v. United States, 209 U. S. 56, 83, 28 Sup. Ct. 428, 52 L. Ed. 681; Cochran and Sayre v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704; Grand Rapids & I. Ry. Co. v. United States, 212 Fed. 577, 583, 129 C. C. A. 113, and citations [C. C. A. 6]); the motion to quash the indictment was therefore rightly denied.

[7, 8] 2. The assignment concerning denial of defendant's motion to direct a verdict at the close of the government's evidence is not available, since the alleged error was waived by the introduction of evidence for defendant (Sandals v. United States, 213 Fed. 569, 573, 130 C. C. A. 149 [C. C. A. 6]; Tucker v. United States, 224 Fed. 833, 837, 140 C. C. A. 279 [C. C. A. 6]); but such waiver did not affect the right of defendant to have the sufficiency in law of the entire evidence considered upon the motion to direct made at the close of all the testimony (Tucker v. United States, supra, 224 Fed. at 837, 140 C. C. A. 279). Our consideration of all the evidence, however, satisfies us that the last motion to direct was rightly overruled as to the second and third counts. In reaching this conclusion we are not unmindful of the contention that defendant was charged with knowingly receiving stolen property, and that the evidence tended at most to show only that he received embezzled property. This is a misap-

prehension of the relation borne to the property in dispute by the tallymen, who appear to have had more or less to do with its alleged theft. They were to "check freight in and out of cars," rather than to take it into their possession and control; they were not intrusted with the property in the sense that their acts of taking and disposing of it for their individual benefit amounted to embezzlement; such a taking, if it occurred, was simply larcenous. State v. C. B. Smith, 250 Mo. 350, 367, 157 S. W. 319. The decision in that case is sufficient to point the distinction which renders the decisions of the same court, relied on by defendant, inapplicable (State v. Gennusa, 258 Mo. 273, 274, 167 S. W. 439; State v. George, 263 Mo. 686, 173 S. W. 1077, 1078); for in the latter cases the property in question was intentionally committed to teamsters for purposes of transportation and specific delivery, and after possession was taken the conversion was committed in the course of executing the duty.

[9] 3. We come next to the errors assigned respecting the charge of the court. The first instruction to which exception was reserved dealt with the question whether the goods and chattels "were articles in interstate transportation and were stolen," and also with the circumstances which might be considered in determining that question. The court stated that both the pig tin and the brass seemed to have been subjects of interstate transportation, and that the jury might "use the circumstances surrounding these shipments and any other circumstances that give to you (the jury) the right to indulge in reasonable inferences that men use under like circumstances to determine" the fact or not of theft. The exception mentioned concerned this latter portion. It is true that this instruction affected defendant in the sense that he could not be rightfully convicted of knowingly receiving stolen goods that were not shown to have been stolen, yet in our view of the evidence the instruction could not have prejudiced the defendant. Following that subject it was said:

"If you determine that you can identify as stolen two barrels of brass or any portion of the shipment of brass referred to in the exhibits in question, or the pig tin referred to in the exhibits in question, if that identification satisfies you beyond a reasonable doubt, then, of course, logically, your next inquiry is, whether either or both of those classes of articles, on one count or the other, came into the possession of the defendant Sam Kasle. You must carry the identification, of course, to him. * * *

"Then, if you find, beyond a reasonable doubt, either this brass or this tin in Sam Kasle's possession, you must proceed then to determine whether he had possession of either or both of those classes of articles, knowing that they were stolen.

"I may say to you, in the first place, that the law is that the possession of stolen property imputes knowledge in the possessor that it was and is stolen, unless the possessor explains his possession in such a way as to free his mind [as to free him?] from that presumption.

"The law also is that one who acquires possession of stolen property, under conditions and circumstances which would put a reasonable man who was honest upon inquiry as to the character of that property, is deemed to have just such knowledge of the character of the property as would come to him had he made the reasonable inquiries as to the source of the property which would occur to an honest man of average intelligence under the circumstances in which he got it; that one who takes into his possession personal property is chargeable with the duty of giving attention to those circum-

stances attending his reception of the property which in your judgment should have been deemed by him at the time to be suspicious and suggestive that the title of him who was transferring it was open to question."

As we understand these portions of the charge, the jury was in substance instructed to find: (a) Whether the goods and chattels in issue were articles of interstate transportation; (b) whether they were stolen while in course of such transportation; (c) whether defendant came into possession of them; and, if these findings were in the affirmative, then to find (d) whether defendant received the articles knowing them to have been stolen. Later it was said of the statute:

"This law makes one of the essential elements of the offense possession with knowledge."

If error was committed in respect of the ultimate issue of fact, it was not in defining it but in stating the tests to which the jury might resort in resolving the issue one way or the other. One of the tests was in effect that a person who receives property, which in fact is stolen property, under circumstances which would put a reasonable and honest man upon inquiry, is chargeable with such knowledge in that behalf as would have come to him had he made such reasonable inquiries, touching the source of the property, as would have occurred "to an honest man of average intelligence." Another test was that one receiving personal property is chargeable with the particular effect of "those circumstances attending his reception of the property," which, in the judgment of the jury, "should have been deemed by him at the time to be suspicious and suggestive that the title" of the transferor "was open to question."

Plainly such tests as these of guilty knowledge on the part of the accused subjected him to a standard of conduct and of capacity to detect crime, which the jury might conclude to be the standard of reasonable and honest men of average intelligence when acting under circumstances like those which might be found to have existed here. The effect of such tests was to charge the accused with guilty knowledge or not upon what the jury might find would have induced belief in the mind of a man such as they were told to consider, rather than the belief that was actually created in the mind of the accused; or, at last, the accused might be condemned even if his only fault consisted in being less cautious or suspicious than honest men of average intelligence are of the acts of others. The result of the rule of the charge would be to convict a man, not because guilty, but because stupid. The issue was whether the accused had knowledge—not whether some other person would have obtained knowledge—that the goods had been stolen. The circumstances must have had that effect upon the mind of the accused, to constitute knowledge in him. The issue must be determined upon the individual test of the accused. It may well be that the tests stated in the charge are proper enough to fix civil liability for the acts or omissions of a defendant, but hardly to fasten upon him an intent to commit a felony. There is some conflict in the decisions upon this subject, but we think the tests of the charge are opposed to the clear weight of authority; this may be fairly illustrated by the

following: State v. Alpert, 88 Vt. 191, 204, 92 Atl. 32; Peterson v. United States, 213 Fed. 920, 922, 923, 130 C. C. A. 398 [C. C. A. 9]; State v. Rountree, 80 S. C. 387, 391, 61 S. E. 1072, 22 L. R. A. (N. S.) 833; State v. Daniels, 80 S. C. 368, 371, 61 S. E. 1073; State v. Goldman, 65 N. J. Law, 395, 397, 47 Atl. 641; Cohn v. People, 197 Ill. 482, 485, 64 N. E. 306; Robinson v. State, 84 Ind. 452, 456; State v. Denny, 17 N. D. 519, 525, 526, 117 N. W. 869; Forrester v. State, 69 Tex. Cr. R. 62, 152 S. W. 1041, 1042; Pickering v. United States, 2 Okl. Cr. 197, 101 Pac. 123, 124; Drummond v. State, 103 Miss. 221, 224, 60 South. 138.

[10] It is not meant to say, however, that conviction cannot be established upon circumstantial evidence. While there was direct testimony, and specific denial, of guilty knowledge on defendant's part, yet there were in addition circumstances of more or less tendency to show as well as to refute such knowledge; the relevancy of such circumstances, when not too remote, cannot of course be rightly denied; but, apart from instructions as to whether the property was in fact stolen, no difficulty is perceived in applying the circumstances directly to the accused with a view of testing the question of notice or knowledge on his part, at the times he received the goods and chattels, that they had been stolen (if in fact they were stolen).

[11] Another feature complained of in the charge is, as already shown, that the law is stated to be:

"That the possession of stolen property imputes knowledge in the possessor that it was and is stolen, unless the possessor explains his possession in such a way as to free his mind [as to free him?] from that presumption."

We gather from the context that this portion of the charge was intended to be applied only in case it should first be found, as already stated, that the articles in issue— the tin and the brass or either—had been stolen while in course of interstate transportation, and that either or both had come into defendant's possession; but in that event the jury was to approach the ultimate question subject to a presumption that defendant received the articles with knowledge that they had been stolen. This question was of course vital to defendant. He was not charged with the theft; the only tendency of the proofs in that behalf is that the theft was committed by others; and these acts, if committed, constituted larceny. The charges that defendant had the articles in his possession with knowledge of the theft do not in terms allege that such possession was taken in aid of the larceny; hence each charge made against defendant was for an offense distinct from the antecedent larceny. The instant case therefore differs from a case, where, for instance, the statute so defines the act of receiving stolen property and that of stealing it as in effect to make the two offenses the same in character. Under a statute of that kind the receipt may amount to larceny, as well as the theft; and so the same presumption arising from recent possession that would be applicable to the thief might also be to the receiver. Thus in Martin v. State, 104 Ala. 71, 78, 16 South. 82, under an indictment for both larceny and knowingly receiving, it was held "that the recent possession of stolen goods,

imposes on the possessor the onus of explaining the possession," etc.; but, as we understand, the case arose under a statute in which it is provided:

"Any person, who buys, receives, conceals or aids in concealing any personal property whatever, knowing that it has been stolen, and not having the intent to restore it to the owner, must, on conviction, be punished as if he had stolen it." 2 Crim. Code Ala. 1896, § 5054, p. 369.

To the same effect is Jenkins v. State, 62 Wis. 49, 21 N. W. 232, and also the statute (2 Sanborn & Berryman Ann. Stat. Wis. § 4417); moreover, the decisions mostly relied on there relate to cases of larceny (62 Wis. 57, 58, but see page 61, 21 N. W. 232); State v. Record, 151 N. C. 695, 697, 65 S. E. 1010, 25 L. R. A. (N. S.) 561, 19 Ann. Cas. 527, and 2 Pell's Revisal of 1908 (N. C.) § 3507; and Reg. v. Langmead (1864) 10 L. T. (N. S.) 350, 351, and 101 Stat. (24 and 25 Vict. 1861) 361, §§ 91, 92; and also 2 Archbold's Crim. Pr. & Pl. 1422. The statute last referred to (and which apparently governed Langmead's Case) provided that a person receiving stolen property, "knowing the same to have been feloniously stolen," should be guilty of a felony and might be "indicted and convicted either as an accessory after the fact or for a substantive felony," etc., and also provided that an indictment might contain a charge of "feloniously stealing any property," and also one or more counts for "feloniously receiving the same or any part or parts thereof, knowing the same to have been stolen," etc.; Langmead was indicted and tried on two counts, one for stealing and the other for receiving, and was found guilty of feloniously receiving; Pollock, C. B., said (page 351):

"The distinction between the presumption as to felonious receiving and stealing is not a matter of law. No doubt, upon the evidence, no other person than the prisoner appears distinctly to enter into the transaction, and all that appears is that the prisoner was found very recently in possession of the stolen sheep. That prima facie is evidence of stealing rather than of receiving, but in no case can it be said to be exclusively such, unless the party is found so recently in possession of stolen property, and under such circumstances as to exclude the probability of receiving; as where a party is stopped coming out of a room with a gold watch which has been taken from the room; but if he has left the room so long as to render it probable that he may have received it from some one else, then it may be evidence either of stealing or of feloniously receiving."

These decisions and the statutes affecting them are enough to illustrate the distinction, already mentioned, between cases of that character and the instant case. If those decisions cannot be so distinguished, we are unable to follow them; but must rather adopt the rule of the cases hereafter cited. We cannot think that the last quoted portion of the charge here is sustainable under either count 2 or count 3 of the present indictment. The charge is broad and unqualified; it states as matter of law "that the possession of stolen property imputes knowledge in the possessor that it was and is stolen"; and the defendant is at once put upon his proofs to free himself of that presumption. It might be that the circumstances shown to have attended the possession of property involved in a given case, not to say the case in hand, would, if unexplained by defendant, naturally lead the jury to believe that he received the property with knowledge that

it had been stolen; but to impute such knowledge as matter of law, is a different proposition. The effect of this, as it seems to us, was to impose the burden upon defendant to prove his innocence, in case the jury should find the goods had in fact been stolen. Defendant's possession, say of the tin, was practically admitted; and, if it was once found that this tin was in fact stolen, the effect of the charge was to treat such admission, coupled with such finding, as sufficient to impute "knowledge in the possessor that it was and is stolen" property; and this was calculated to prejudice the rights of the accused. In Durant v. People, 13 Mich. 351, Durant was charged with receiving stolen goods, "knowing the same to have been feloniously stolen," etc.; and, upon a ruling of the court below excluding testimony tending to show possession but without guilty knowledge, Christiancy, J., speaking for a unanimous court, said (13 Mich. 352):

"The defendant was not charged with larceny of the goods, and her possession could not be used as evidence tending to show that she had stolen them. Her possession must be regarded as innocent, unless shown to have been received with knowledge that they were stolen, or under circumstances which would satisfy the jury that she believed them to be stolen. Possession itself, without evidence tending to show such guilty knowledge, could have no tendency to establish her guilt. She did not, in fact, undertake to deny the possession, but admitting it, claimed she had come to the possession innocently, without notice that the goods were stolen. In the aspect the case had assumed when this question was proposed to the witness, guilty knowledge was practically the only question in dispute. But independent of the particular aspect the case had assumed upon the evidence, we think, in all prosecutions for this offense, it must, upon principle, be competent alike both for the prosecution and the defense to show what were the actual circumstances, the arrangement or understanding under which the goods were received by the defendant, whether the effect shall be to establish guilt or innocence. This is the res gestæ, the very essence of the inquiry."

See State v. Richmond, 186 Mo. 71, 82, 85, 84 S. W. 880; State v. Weinberg, 245 Mo. 564, 571, 150 S. W. 1069; People v. Weisenberger, 73 App. Div. 428, 429, 77 N. Y. Supp. 71; People v. Wilson, 151 N. Y. 403, 406, 45 N. E. 862; State v. Freedman, (Del. Ct. of Gen. Sess.) 3 Pennewill, 403, 405, 53 Atl. 356; State v. Janks, 26 Idaho, 567, 577, 578, 144 Pac. 779; Castleberry v. State, 35 Tex. Cr. R. 382, 383, 33 S. W. 875, 60 Am. St. Rep. 53; Territory v. Claypool & Lueras, 11 N. M. 568, 577, 71 Pac. 463; Slater v. United States, 1 Okl. Cr. 275, 98 Pac. 110, 113; Cooper v. State, 29 Tex. App. 8, 19, 13 S. W. 1011, 25 Am. St. Rep. 712; 2 Wharton's Crim. Ev. (10th Ed.) § 760.

We conclude that the errors pointed out in the charge were prejudicial; and an order will accordingly be entered reversing the judgment and remanding the case for new trial.