## THE STATE v. MORRIS WEINBERG, Appellant.

**Division Two, November 13, 1912.**

1. **RECEIVING STOLEN GOODS: Presumption from Possession: Knowledge: Inferred.** In a prosecution for receiving stolen goods, knowing the same to have been stolen, naked possession of the property recently stolen is not alone sufficient to raise a presumption of guilt, as in the case of larceny; but in addition to proof of possession, it is essential to a conviction that the testimony tend to prove knowledge of the accused, at the time he received the property, that it was stolen. But direct testimony of such knowldge is not required; it may be inferred from facts and circumstances.

2. ————: **Facts From Which Knowledge May Be Inferred.** Defendant was a merchant tailor and kept a tailoring shop, and was indicted for receiving a man's black overcoat with a muskrat collar, of the value of $87.50, the property of the Grand Leader, a retail clothing house, knowing the same to have been stolen; and it is *held*, that the facts and circumstances in evidence were sufficient to authorize an inference by the jury that defendant knew the overcoat had been stolen at the time he claims he bought it for less than one-third its value from an unknown man who represented himself as a traveling salesman.

3. ————: **Instruction: Collateral Matter: Other Stolen Goods: For What Purpose to be Considered.** In determining the guilt or innocence of defendant of receiving the stolen overcoat mentioned in the information, knowing it to be stolen, testimony that the merchant about the same time lost nine similar overcoats, and that four of them were found in defendant's possession, and of the manner in which he had disposed of them, was competent to show his guilty knowledge; but it was not incumbent upon the court to give an instruction telling the jury for what purpose that testimony was competent, and cautioning the jury to consider it only in determining whether or not the defendant received the one overcoat mentioned in the information, knowing it to be stolen. Even though such an instruction, if asked, might be given without error, the failure of the court to give it is not error, for the purpose for which such testimony is admitted is not a question upon which an instruction is necessary for the information of the jury in making up their verdict.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

AFFIRMED.

*C. Orrick Bishop* for appellant.

(1)   The verdict in the cause was unfair and unjust.   Assuming that the property mentioned in the information was proven to have been stolen, it clearly appears from the testimony that the connection of appellant with that property was very different from that usually shown in cases of guilty receiving.   (a) The testimony as to the circumstances under which the purchase of the alleged stolen property was made clearly shows that such purchase was openly made, without concealment, subterfuge, secrecy, or under cover of darkness, but in broad daylight, in a place upon a populous thoroughfare and in the presence of witnesses.   (b)  The representations of the supposed thief were such as might have imposed upon "a reasonably prudent man, exercising ordinary caution, on his guard;" the vendor was apparently a guest at a near-by popular hotel; and his appearance, dress and manner such as to indicate that he was what he represented himself to be.   (c)  The property alleged to have been stolen after coming into the possession of appellant was treated as honest merchandise, exposed to open view, advertised for sale and exhibited to prospective buyers in the usual course of trade; indeed, one article was publicly sold, and publicly worn for about two weeks by one of the purchasers.   (d) It is incredible that a man of ordinary caution, reasonably prudent, on his guard (if indeed appellant was such a man), would openly and above board, in his place of business, in the locality where situated, expose for sale, and invite persons to buy, property which he had cause to believe or be satisfied was stolen; or that he would openly call attention to his purchase and ask opinions as to his "bargain." (e)   There was no such discrepancy in price paid for the articles and their actual value as usually accompanies a purchase of known stolen property.   True, the testimony as to the coat

taken from Chiswell's pawnshop indicates that the Grand Leader's price for it was $87.50, but there is no testimony whatever as to the value of any other garment found in possession of appellant. The manager of the Grand Leader testified that a garment was "missing" valued at $325, but it was never recovered; that a muskrat lined coat found at Dunn's was valued at $125, but this garment was never in the possession of appellant; and there was no evidence as to the value of any other. (f) The testimony that the garments in question were stolen was by no means conclusive. The manager of the Grand Leader testified as to the manner in which the fur garments were kept and handled in their store; that he could not see how anybody could come in the place where the coats were and carry them off; and yet for all he knew a coat might be sold by a dishonest salesman, without reporting the sale, and the money appropriated; all he could say was that the articles were "missing," with no report of sale. Against this testimony, all consistent with appellant's innocence of the charge of which he was convicted there was no evidence of any suspicious conduct on his part. (2) This court has recently, in the Hyde case, 234 Mo. 200, gone fully into the law regarding the admission of alleged offenses other than that charged in the information; and it is an exceedingly delicate matter, trenching closely upon the legal right of the accused to be specifically informed of the exact charge he is to meet. In cases of receiving stolen property knowing it to have been stolen, I do not question the right of the State to introduce, nor of the court to admit, testimony tending to show the reception of property other than that specified in the information, if it has a tendency to prove the *scienter;* but this is a matter of law, understood by the profession and not by the laymen; and where the jury are permitted to receive such testimony, how are they to

apply it, in its legal and restricted effect, without being instructed as to the law applicable thereto? The statute provides that the court, whether requested or not, must instruct the jury upon all questions of law arising in the case which are necessary for their information in giving their verdict; and a failure to do so, in a felony case, necessitates a new trial. In the recent Rasco case, 239 Mo. 535, the court said that this was a collateral matter; possibly and probably so in that case, where four persons were killed at the same time and the house in which they were slain was burned with the manifest purpose of destroying evidence of the crime; there each killing was a part of the *res gestae,* and one could hardly be shown without evidence of the others. But in this case, a very different phase is presented. There could hardly be a question of the *scienter* in the Rasco case; but in the case at bar, *scienter* was the very gist of the offense charged. Insufficient as the whole evidence was to warrant the conviction, it must be conceded that the State's case would have been utterly worthless if based solely upon the alleged theft of the property described in the information and its reception by appellant. The testimony as to other alleged larcenies and receivings, being exceptions to the general rule of evidence in criminal cases, and having a restricted legal place in the case, appellant was entitled, as a matter of right, to have the jury instructed as to how they should consider that testimony as bearing upon the question of his guilt or innocence; otherwise they may have believed that they were warranted in convicting him upon evidence of matters not charged, inasmuch as that evidence had been delivered to them with the sanction of the court. Hence the matter was not collateral, but integral, of the very essence of the charge, and thus coming strictly within the command of the statute.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Evidence as to other sales of stolen goods by King to appellant was competent as tending to show guilty knowledge in the purchase on which the information was based. State v. Goldblat, 50 Mo. App. 189; State v. Richmond, 186 Mo. 86. (2) Instruction 5 is: "The mere naked fact of the possession of said property by defendants, if such is the fact, raises no presumption that defendants knew such property was stolen." This instruction was favorable to the appellant, as it stated to the jury the fact that appellant had the possession of said goods was no evidence and raises no presumption that he knew such property was stolen.

KENNISH, J.—Appellant, Morris Weinberg, and his son, Julius Weinberg, were jointly prosecuted by information in the circuit court of the city of St. Louis, charged with grand larceny in the first count, and with the felony of receiving stolen goods, knowing the same to be stolen, in the second count. Upon a trial appellant was convicted under the second count and his punishment assessed at a term of two years in the penitentiary. From the judgment entered he appealed to this court. His codefendant, Julius Weinberg, was acquitted.

The property described in each count of the information was the same, to-wit, one man's black overcoat with muskrat collar, the property of the Stix, Baer & Fuller Dry Goods Company, of the value of $87.50.

The evidence for the State tended to prove these facts, namely: Stix, Baer & Fuller Dry Goods Company, a corporation known as the Grand Leader, is engaged in the retail clothing business in the city of St. Louis, and about the middle of October, 1910, re-

ceived from the city of New York a consignment of eleven high-priced overcoats. One of these coats was missed from the stock on the 29th day of November, 1910, and several others were missing within a few days thereafter. Detectives were employed to locate the missing garments. On December 12 one of the coats was found at Dunn's pawnshop in said city, where a few days before it had been pawned for thirty dollars by a person giving his name as Condon. On the said 12th d·· of December appellant's son, Julius Weinberg, called at the said pawnshop, having the ticket issued to Condon for the coat, and offered to redeem it, saying a friend of his in the hotel had asked him to get it for him. A detective named Usher working on the case came into the pawnshop at the time, and young Weinberg, in answer to an inquiry, stated to Usher that he got the ticket that morning from a man named King, who called at their store, but that he did not know where he was at that time. Usher then went to appellant's place of business and appellant told him he got the ticket two weeks before from a man supposed to be stopping at the Laclede Hotel, just across the street from appellant's place of business. Appellant was asked by Usher if he had any more such tickets or fur-lined overcoats and answered that he had not. On December 28, 1910, the black overcoat with the muskrat collar, described in the information, was found in a pawnshop conducted in said city by a man named Chiswell. This coat had been pawned a week before by a bartender who had recently purchased it from a man named Fischer, who in turn had purchased it from appellant on November 22, 1910, as shown by a written receipt for the purchase price which was introduced in evidence. When the possession of this coat was traced to appellant he was asked if he had sold it to Fischer. He first said he could not recall it, but later said he had. Two detectives then went to appellant's home and found there, apparently ·

concealed, three of the fur-lined coats which had been missed from the Grand Leader stock.

Appellant and his codefendant testified that they purchased the coats and pawn ticket from a man giving his name as John King; that they first bought two coats for which they paid twenty-five dollars each, and about two weeks later bought two others for twenty dollars each, and shortly thereafter bought the pawn ticket for one dollar, without having seen the coat called for by the ticket. Appellant testified that after purchasing the coats he placed them on sale in his store where they could be seen and were seen by the public; that after selling one—the coat described in the information—and failing to get his price for the others, he took the three remaining garments to his home for use by himself, his son and his wife, one of the garments being a lady's fur-lined coat, and that they had publicly worn them. He further testified that King represented himself as a travelling salesman, and that these coats which he sold to appellant and the one left at Dunn's pawnshop were samples which he was anxious to dispose of, and that the coats were bought and received by him in good faith without knowledge that they were stolen. There was testimony tending to corroborate appellant and his son as to the purchase of the coats, and that a man calling himself John King, of the personal appearance described by appellant, had been seen in appellant's store negotiating for the sale of the coats and had occupied a room at the Planters' Hotel in said city. Other material facts will be stated in the course of the opinion.

I.  The first ground upon which appellant urges a reversal of the judgment is that the verdict is not supported by sufficient evidence.

In the consideration of this assignment of error we must review the testimony under the law as decided in the case of State v. Richmond, 186 Mo. 71, and reaffirmed in later decisions of this court. The rule of

State v. Weinberg.

law established in these cases is that naked possession of property recently stolen is not alone sufficient to raise a presumption of guilt, as in the case of larceny. In addition to proof of possession it is essential to a conviction that the testimony should tend to prove knowledge of the accused, at the time he received the property, that the same was stolen. But direct testimony of such knowledge is not required. It may be inferred from facts and circumstances. The rule is stated in 10 Encyclopedia of Evidence, p. 670, as follows:

"Knowledge that goods were stolen need not be shown by direct testimony, nor is it essential that the accused should have that actual or positive knowledge which one acquires from personal observation of the fact, but the guilty knowledge will be implied if the circumstances are such as should have been sufficient to satisfy a man of ordinary intelligence and caution that property was stolen."

And in Kelley's Crim. Law & Prac., Sec. 684, discussing the same subject, it is said:

"In this case, as in larceny, the possession of goods recently stolen, the *corpus delicti* being proved, tends to establish the guilt of the party having such possession; but the naked possession, unaided by other proofs, is not evidence that he received them, *knowing* them to have been stolen. Slight additional evidence or circumstances may be sufficient to show guilty knowledge, as if he had in his possession other stolen goods, or purchased from the same thief other goods known to have been stolen, or received them under circumstances which would induce a man of ordinary observation to believe they had been stolen, or concealed them."

It appears that appellant was a merchant tailor and it is presumable knew the value of clothing. In explanation of the incriminating fact of possession of the property recently stolen, he testified that he bought

the coat described in the information, worth $87.50, for twenty-five dollars, and from a man with whom he had only the slightest acquaintance. The purchase was not made in the usual course of business, but by this stranger coming into appellant's store with the garments on his arm; and this, notwithstanding the fact that appellant knew that the person from whom he purchased the four coats was stopping at the hotel directly across the street from appellant's store. Upon appellant's advice his son bought a pawn ticket for one dollar from the same man, entitling him to redeem for thirty dollars a fur-lined coat worth $125, without first going to the pawnshop to examine the coat or to see if such garment was in existence. When the son presented this ticket at the pawnshop, in the presence of a detective, on December 12, 1910, the latter went to appellant's store and asked appellant about the ticket. Appellant answered that he had gotten it two weeks before from a man named King supposed to be stopping at the Laclede Hotel. He was further asked if he had any other such tickets or fur-lined coats and answered that he had not, although he admitted at the trial that he then had in his possession three of the coats missed from the Grand Leader stock and received from the same man who had sold his son the pawn ticket. Appellant also then knew, according to his testimony, that he had purchased from the same man the coat sold to Fischer, but which was not found until about two weeks thereafter. On the date last named, December 28, 1910, the coat described in the information was found in another pawnshop. Appellant first said he could not recall having sold the coat to Fischer, though he afterwards admitted that he had, and again denied having any other fur coats, although he must have known of the three coats received from the same person, which he had removed from the store to his home and which were then in his possession.

These facts and circumstances, although contradicted in part by appellant's testimony, we think warranted the jury in finding that appellant had knowledge that the coat described in the information was stolen, when he received it.

In appellant's brief much stress is laid upon the testimony tending to prove that, after the alleged purchase of the coats from King, he exposed the same for sale, making no attempt to conceal them from the public. It is maintained with much ability that such conduct is inconsistent with knowledge that the goods were stolen. If the property had been of such character as to be readily identified this argument would have much force, but in view of the testimony that "these kinds of coats are manufactured by a large number of concerns in the United States," that the concerns selling such goods are "numberless," and that "there are numerous salesmen out selling the goods," we are not disposed to attach much weight to the fact that defendant kept said goods in his store until about the time he knew he was under suspicion.

The point is also made that the testimony was insufficient in that it was not shown that the garments missing from the Grand Leader store were stolen. It was clearly proven that the coats were in the possession of the owner in the Grand Leader store October 11, 1910, and that without the knowledge or consent of the owner they were taken from the store and were found recently thereafter in the possession of others claiming to own them. That was sufficient proof of the larceny and about the only way in which larceny can be proved unless, as is rarely the case, there is direct proof of the theft.

A thorough consideration of the testimony has satisfied us that the jury was fully warranted in finding that the coat described in the information was stolen as charged, and that appellant had guilty knowledge of the larceny when he received it.

II. Appellant complains that testimony was admitted over his objection as to the finding of alleged stolen property belonging to the Grand Leader, at Chiswell's pawnshop, and with which appellant was in no wise connected.

This reference to the Chiswell pawnshop is doubtless a mistake, for the coat found there is traced directly to appellant's possession and is the coat upon which the charge is based. But that complaint is equally without substance if we regard it as referring to the coat found in Dunn's pawnshop and for which appellant's son presented the pawnticket, for it is shown in evidence that appellant advised his son to purchase that ticket, and when asked about it said that he, appellant, had bought the ticket from King two weeks before. This testimony was competent on the issue of guilty knowledge.

III. It is finally contended, as stated in the motion for a new trial, that "the court erred in failing to instruct upon the admission of the evidence upon the part of the State, touching other larcenies and the receiving of other stolen property by him than that mentioned in the information."

The legal question presented by this assignment is: Was an instruction, limiting the purpose for which testimony as to other offenses should be considered, necessary for the information of the jury in giving their verdict? In this connection it is well to state the testimony from which the question arises. Nine coats were stolen from the store of the Grand Leader company. Four of these garments were proved to have been in the possession of appellant recently thereafter. The testimony for the State did not disclose whether these coats were the subject of one larceny or whether they were received at one time by appellant and therefore constituted but one offense. As bearing upon the latter offense the State merely

proved recent possession of other stolen property and the character of such possession, as circumstances tending to prove that when appellant received the coat he knew it was stolen. It is true that, according to appellant's testimony, two of the coats were received at one time and the other two at a different time. But even with this testimony in the record, we are of the opinion that it cannot be successfully maintained that such a question of law was presented thereby as made necessary a cautionary instruction to the jury, as contended by appellant.

What questions are necessary for the information of the jury and upon which a failure to instruct will be a good cause for a new trial, and what are questions upon which an instruction may properly be given but which a failure to give will not entitle the defendant to a new trial unless proper instructions are requested, have not been definitely pointed out by this court. Indeed it might be difficult to make such a distinction as would be applicable in all cases and inadvisable to attempt it. That such a distinction does exist is made clear in a number of decisions of this court. These cases are ably reviewed by FERRISS, J., in the case of State v. Starr, 244 Mo. 161. From a consideration of these cases we think it may be safely said that instructions presenting the facts constitutive of the offense charged or of any grade thereof shown by the testimony, the punishment authorized to be inflicted in case of a conviction, instructions upon the presumption of innocence and reasonable doubt, and good character when put in issue by the testimony, and also instructions presenting the law upon each defense interposed by the accused, are necessary for the information of the jury.

In the case of State v. Starr, supra, testimony of the former conviction of the defendant, and also of bad character, was introduced by the State for the purpose of impeachment. It was there held, follow-

ing the case of State v. Kilgore, 70 Mo. 559, that such testimony did not present a question of law upon which an instruction was necessary. In the recent case of State v. Rasco, 239 Mo. 535, the defendant was charged with the murder of Oda Hubbell, and testimony was admitted showing the murder of other members of the family at the same time. On appeal complaint was made that the court failed to give an instruction to the jury limiting such proof in its relation to the crime charged. It was held that the question raised by such testimony was a collateral matter and that the failure to give an instruction thereon was not error. The question thus decided in the Rasco case is so similar to the question under consideration that we regard that case as authority against appellant's contention.

In determining the guilt or innocence of the defendant in the case at bar the jury were properly restricted by the instructions to the "personal property mentioned in the information." That other property, stolen from the same owner, was shown to have been found in appellant's possession, was concededly competent to prove the defendant's guilty knowledge. The purpose for which such testimony was admitted, under the decisions of this court, was not a question upon which an instruction was necessary for the information of the jury in giving their verdict, and the failure to give such an instruction was not error.

The record in this case fails to disclose prejudicial error, and the judgment is accordingly affirmed.

*Brown, P. J.,* and *Ferriss, J.,* concur.