**STATE of Missouri, Respondent,**

v.

**J. C. PATTERSON, a/k/a Jesse Patterson, a/k/a Woodrow Anderson, Appellant.**

No. 53201.

Supreme Court of Missouri,
En Banc.

May 12, 1969.

Rehearing Denied June 9, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, James R. Robison, Sp. Asst. Atty. Gen., Sikeston, for respondent.

Albert C. Lowes and Kenneth L. Waldron, Buerkle & Lowes, Jackson, for appellant.

DONNELLY, Judge.

Appellant, J. C. Patterson, was convicted of assault with intent to do great bodily harm under § 559.190, RSMo 1959, V.A. M.S., by a jury in the Circuit Court of Cape Girardeau County, Missouri, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of five years. Following rendition of judgment and imposition of sentence a late appeal was perfected, by leave, to this Court. Appellant is represented in this Court by counsel appointed by the trial court to assist appellant on his appeal.

At the trial, Mary Renn testified that on the evening of October 4, 1966, she was at her home in South Cape Girardeau with her two children, Rosemary, age 9, and Larry Joe, age 2, her three grandchildren, and appellant; that her grandson was crying when they went to bed and Rosemary could not quiet him; that appellant stated, "By God, she will get him quiet," and that appellant grabbed a dog collar and "went to beating on her." Mary Renn testified that the dog collar had a big square buckle on it and that she heard appellant begin to strike Rosemary on the back and neck with the collar while in the bedroom and that he struck her once or twice while in her presence; that appellant "kinda pulled the licks when he hit her"; that Rosemary had scars, marks and two or three cuts on her back and neck after appellant struck her.

Counsel for appellant then objected to the State's question whether appellant had "beat" Rosemary prior to the occurrence in question. The objection was overruled. Mary Renn then testified that she had seen appellant "beat her a lot of times"; that appellant had been in her home four or five months; that he "beat" Rosemary with a belt and water hose once across the back that left marks and hit her with a pole a time or two and that appellant would "beat" her with anything he could get in his hands. Mary Renn also testified that on the night in question she told appellant not to hit Rosemary any more and he went on to bed, and that she told Rosemary to report the incident to Mrs. Cook, the school nurse.

On cross-examination Mary Renn testified that appellant was Rosemary's father and had the right to discipline and reprimand Rosemary but not "beat" her.

Mrs. Opal Cook testified that she was a registered nurse at May Greene School; that she saw Rosemary the morning of October 5, 1966; that Rosemary kept her coat on in class, took it off for Mrs. Cook and showed her where she had been "beaten"; that Rosemary had several welts, eleven major lacerations and contusions on her legs, thighs, back, arms, and the back of her neck; that she administered first aid cream; that the skin was broken; that there had been some previous bleeding; and that after consulting with her mother and the Welfare Office, she made an appointment for Rosemary to see Dr. Parsons on October 6, 1966.

On cross-examination, Mrs. Cook testified that the lacerations were not deep and severe and did not require suturing; and that under normal conditions the contusions and lacerations would probably not have resulted in death.

Dr. D. L. Parsons of Cape Girardeau testified he saw Rosemary in his office on October 6, 1966, when Mrs. Cook, nurse at May Greene School, brought her in; that he examined Rosemary completely and found multiple wheals, deep contusions and lacerations over most of her body, none on the face, mainly on the trunk; that he made an attempt to examine her vaginally and the vagina would admit one finger and the hymen was intact. Counsel for appel-

lant objected to this testimony as being irrelevant, immaterial and inflammatory and requested a mistrial. The objection and request were overruled by the trial court. Dr. Parsons then testified the wheals on Rosemary's trunk were square, as if made by some heavy square object, about two inches long and about twenty-five in number; that suturing was not required but there apparently had been some bleeding under the skin; that a belt or belt buckle could have inflicted the wheals; and that the injuries were not such that they had done great bodily injury to Rosemary.

Charles Copen testified that Mary Renn was his mother and appellant was no relation to him; that his mother was baby-sitting for his children on the night in question and he arrived there about 11:15 p. m. to pick up the children; and that Rosemary was crying when he arrived. Over appellant's objection, he testified that he had been present on prior occasions when appellant had whipped Rosemary; that it seemed appellant did this because Rosemary would take longer to do something than appellant thought she should; that he had seen appellant whip Rosemary until she jumped up and down and screamed at the top of her voice and that he had seen welts on Rosemary.

Appellant took the stand and testified that he had spanked Rosemary with two belts but they did not have a buckle; that this was done because he bought clothes for her and she would leave her coat on the school playground; that he bought her another coat but she did the same thing and he spanked her; that he spanked Rosemary on several occasions and had used a dog collar that was smaller than described by other witnesses; and that he never intended to hurt Rosemary or inflict serious bodily injury upon her.

On cross-examination, appellant testified that he spanked Rosemary with a dog collar on the night in question for leaving her coat at school and did not try to hurt her; that he spanked her below the knees and did not see any marks on her; that he "hit her two or three licks and that's all"; that the school children fought on the way home and that he felt that since he was taking care of Rosemary he should have a right to discipline her.

■ Appellant did not file a motion for new trial in the trial court. Therefore, the points raised by appellant on appeal are not preserved for review (State v. Kennebrew, Mo.Sup., 380 S.W.2d 293; State v. Gooch, Mo.Sup., 420 S.W.2d 283, 287) unless they constitute "plain error" under S. Ct. Rule 27.20(c), V.A.M.R., which reads as follows: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

■ Appellant first contends that the trial court erred in failing to instruct the jury that one "standing in loco parentis may inflict upon a child in his charge, punishment which is reasonable under the facts and circumstances without incurring criminal liability for assault or a similar offense."

We agree that the evidence supports a defense that the disciplinary action taken by appellant was reasonable and not excessive. State v. Black, 360 Mo. 261, 267–268, 227 S.W.2d 1006, 1009–1010. Therefore, it was error for the trial court to fail to instruct the jury as to this defense. State v. Drane, Mo.Sup., 416 S.W.2d 105, 107; § 546.070(4) RSMo 1959, V.A.M.S.; S.Ct. Rule 26.02(6), V.A.M.R. The question then becomes whether "manifest injustice or miscarriage of justice has resulted therefrom."

In State v. Haygood, Mo.Sup., 411 S.W.2d 230, a prosecution for murder in the second degree, Division Two of this Court held that *under the circumstances of that case* failure to instruct the jury on the defense of excusable homicide because of ac-

cident constituted "plain error," warranting a reversal of the judgment of conviction. The Haygood case should not be construed to hold or imply that failure to instruct on a defense supported by the evidence, and which is a part of the "law arising in the case" under § 546.070, supra, and Rule 26.-02, supra, is, *of itself*, such as to result in "manifest injustice or miscarriage of justice" under Rule 27.20(c). We will continue to review the facts and circumstances in each case and to determine this question on a case-to-case basis.

We have reviewed the whole record in this case and do not believe, under the facts and circumstances therein disclosed, that the trial court's failure to instruct on the defense available to appellant resulted in manifest injustice or miscarriage of justice. We decline to grant relief on this point under S.Ct. Rule 27.20(c).

■ Appellant next contends that the trial court erred in giving its instruction on the issue of assault with intent to do great bodily harm, for the reason that "there is no substantial evidence of record to show that the disciplinary actions taken by appellant were excessive or that appellant intended to do great bodily harm to Rosemary Renn."

The evidence shows that appellant administered a severe beating to Rosemary Renn, using an 18 to 24-inch dog collar with a square metal buckle an inch and one-half to two inches square, with which he struck her on the back, neck, arms, legs and thighs, raising multiple wheals, deep contusions and lacerations over most of her body. The evidence also shows that appellant had beaten Rosemary on prior occasions. We believe the evidence is sufficient to show that the disciplinary actions of appellant were excessive and that appellant intended to do great bodily harm to Rosemary Renn. "Intent may and generally must be established by circumstantial evidence, for as a rule it is not susceptible of direct proof." State v. Chevlin, Mo. Sup., 284 S.W.2d 563, 566. The action of the trial court complained of does not constitute error. The point is without merit.

Appellant next contends that admission of testimony from Dr. D. L. Parsons regarding a vaginal examination of Rosemary Renn was clearly erroneous and resulted in undue passion and prejudice in the minds of the jurors against appellant.

Dr. D. L. Parsons testified in part as follows:

"Q. Would you tell this jury the result of your examination?

A. Should I go into what she was complaining about, etc?

Q. Yes.

A. Well, the complaint stated by Mrs. Cook, this little girl was very frightened and was just crying and wouldn't talk. Mrs. Cook said that she was supposed to have been beaten the day before I examined her or—yes, the day before I examined her—and Mrs. Cook said that the little girl told her that—(interrupted)

MR. ESTES: Your Honor, I'll have to object to his testimony as to what Mrs. Cook said.

THE COURT: Yes, just tell, Doctor, what happened, how you examined her and what you found.

A. I examined her completely. She had multiple wheals and deep contusions and lacerations over most of her body, particularly in the right scapular area, shoulder blades and the arms, but she had these on most of her body. I didn't see any on her face, they were mainly on the trunk. *I made an attempt to examine her vaginally and the vagina would admit just one finger and the hymen was intact.*

MR. ESTES: Your Honor, I'll object to this testimony as being irrelevant, immaterial and inflammatory and request that a mistrial be declared at this time.

THE COURT: Overruled.

Q. (By Mr. Snider) Dr. Parsons, limit your testimony to the external physical injuries that you examined.

A. This was the multiple contusions, lacerations and wheals generally, the most striking thing. I did a blood count, the little girl was anemic and I did a urinalysis which was normal. These wheals and contusions were—by wheal, I mean a swelling or raised area of the tissues. They were square, as if made by some heavy, square object."

■ We are of the opinion that the evidence regarding a vaginal examination of Rosemary Renn was inadmissible. However, we do not believe, under the facts and circumstances of this case, that its admission resulted in manifest injustice or miscarriage of justice. We decline to grant relief on this point under S.Ct. Rule 27.-20(c).

■ Appellant finally contends that admission of testimony in regard to prior beatings of Rosemary Renn by appellant was clearly erroneous and resulted in undue passion and prejudice in the minds of the jurors against appellant.

"Proof of the commission of separate and distinct crimes is generally not admissible; but evidence of other crimes is competent when, among other things, it tends to prove the motive or intent essential to establish the specific crime charged. * * *" State v. Lorts, Mo.Sup., 269 S.W.2d 88, 91.

The trial court instructed the jury as follows: "The court further instructs the jury that evidence of other assaults by the Defendant, J. C. Patterson, upon Rosemary Renn, was admitted by the court solely for the purpose of determining whether or not the intent of the Defendant, J. C. Patterson was to do, or not to do, great bodily harm to Rosemary Renn; you are to consider this evidence for no other purpose, for you cannot convict the Defendant of any other charge than the one for which he is now on trial."

The action of the court complained of does not constitute error. State v. Pennington, 124 Mo. 388, 27 S.W. 1106. The point is without merit.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

HOLMAN, C. J., and HENLEY, FINCH and STORCKMAN, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of MORGAN, J.

MORGAN, Judge (dissenting).

I respectfully dissent from the conclusion reached in the majority opinion.

It appears to have been written with the worthy objective of maintaining an orderly procedure for the preservation of alleged errors for appellate review by requiring their presentation to the trial court in a motion for new trial. Certainly there can be no quarrel with this objective as it gives an appellate court the aid of over one hundred trial judges in the task of correcting trial errors. This fact is much more important than demanding compliance for the procedural reason of preserving a question for appellate review. Fortunately, most lawyers will correctly preserve questions for review and some semblance of procedural standards can be maintained. However, as in the instant case, where and in what manner is relief to be given to an accused who has been deprived of a fair trial for reasons not so "preserved" by his counsel. To reach both objectives consistently may be impossible, but I respectfully suggest that the opinion as written fails to reach either.

First, it ignores the fact that no motion for new trial was filed and considers the alleged error on its merits.

Second, it finds that the failure of the trial court to give the instruction in question, found to be supported by the evidence, was an error.

Third, the problem is disposed of, but certainly not solved, by one sentence: "We have reviewed the whole record in this case and do not believe, under the facts and circumstances therein disclosed, that the trial court's failure to instruct on the defense available to appellant resulted in manifest injustice or miscarriage of justice." .

The "error," found by the majority opinion, involved failure to correctly instruct the jury on "the law of the case." The significance of which is compounded in view of the fact the instruction in question would have advised the jury of an authorized "affirmative defense." The missing instruction was not one to be considered as a mere formality, definitive of some terminology or purely cautionary, and the absence of which might be considered as a harmless error. It did not pertain to a collateral issue, but would have been directed toward an essential element of the crime charged. This Court so declared in State v. Weinberg, 245 Mo. 564, 150 S.W. 1069, l. c. 1072[6]: "From a consideration of these cases, we think it may be safely said that instructions presenting the facts constitutive of the offense charged or of any grade thereof shown by the testimony, the punishment authorized to be inflicted in case of a conviction, instructions upon the presumption of innocence and reasonable doubt, and good character when put in issue by the testimony, and *also instructions presenting the law upon each defense interposed by the accused, are necessary for the information of the jury.*" (Emphasis added.) See State v. Conway, 241 Mo. 271, 145 S.W. 441, wherein it was declared that: "Notwithstanding the foregoing rule, if satisfied from the record that there has been a failure to instruct the jury upon a question which goes to the fundamental rights of the defendant, and that by such failure injustice may have been done or a verdict returned different than if such failure had not occurred, this court in the interest of justice will not hesitate to grant a new trial, though the question should be presented here for the first time." See also State v. Chaney, Mo., 349 S.W.2d 238. If juries must be instructed at all, certainly, the absence of this instruction affected a substantial right of the defendant.

Nevertheless, the opinion finds such an "error" not to be a "plain error" for which relief could be given. Rule 27.20(c), V.A.M.R. The obvious question then becomes —Why? In other words, if a "substantial right" of the accused has been denied, by what rationale or mental process is it found that it did not result in a manifest injustice to the accused. If a substantial right was affected, of necessity the accused was denied a fair trial. If the denial of a fair trial does not come within the concept of "plain error," what does? Neither this court nor any other court can have a more worthy objective than to protect the sacred right of any citizen to have a fair trial. It is, in fact, more than an objective—it is the basic duty of any court and the very premise upon which our criminal jurisprudence has been built.

The majority opinion by considering the alleged error, absent a proper motion for new trial, avoids the harshness of declaring that the question was not properly "preserved" and could not be considered, but reaches the same result by finding such error was not a "plain error." This approach does violence to both original objectives by: (1) ignoring the established and desirable procedural standards of requiring a motion for new trial, and (2) denying relief to an accused who has been denied a substantial right, i.e., the hearing of his case by a jury of twelve laymen that have been correctly instructed on the law of the case. The latter is not only dictated

by any definition of a fair trial, but is a legislative mandate found in Section 546.-070, RSMo 1959, V.A.M.S., which, in part, provides: "The jury being impaneled and sworn, the trial may proceed in the following order: (4) Whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt; and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial; * * *."

This Court in State v. Reeder, 395 S.W. 2d 209, resolved a similar problem by following the suggestions of this dissent. Briefly, relief was granted an accused, when it was found the jury was improperly instructed, on the theory that the burden of proving his innocence was placed on the accused or that a burden was shifted. From a realistic view, as applied to a jury trial, the failure to give an instruction favorable to the accused increases his burden, which has the same effect as shifting the burden of proof. For instance, if the "loco parentis" instruction had been given, the jury *might* have found that all or some part of the punishment administered came within the realm of parental correction. No one can say with any degree of certainty what, if any, significant effect the instruction might have had on the jurors.

In essence, the majority opinion affirms the conviction of an accused (with an assessed penalty of five years in the penitentiary) by a jury not only untrained in the law but also improperly instructed as to the applicable law. With this, I cannot agree. See also State v. Beasley, Mo., 404 S.W.2d 689, for another approach to the problem. If the "plain error" rule is to accomplish its purpose, it should be applied in this case.