STATE of Missouri, Respondent,

v.

Joe Raymond BOOKER, Appellant.

No. 63345.

Supreme Court of Missouri,
Division One.

April 8, 1982.

Rehearing Denied May 11, 1982.

Ray Dickhaner, Hillsboro, for appellant.

Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Special Judge.

This is an appeal of convictions of robbery in the first degree for which defendant was sentenced to life imprisonment; robbery in the second degree for which defendant was sentenced to ten years confinement; a second count of robbery in the first degree for which defendant was sentenced

to thirty years confinement; and, carrying a concealed weapon for which defendant was sentenced to five years confinement. The sentences were ordered to be served consecutively.

On June 18, 1980, around noon, Brad Borgwald, then nine years old, was sitting on a back porch at his parents' home in Imperial, Missouri. He saw three black men walk toward his back yard from a nearby highway.

One of the three men was appellant Joe Raymond Booker (herein referred to as defendant). Brad identified defendant as being the first of the three men who approached the Borgwald home. At trial, Brad described defendant as he appeared on June 18, 1980, as having bushy hair and wearing a yellow muddy colored shirt and blue jeans. Brad described one of the other two men as having had a hat and a black shirt. He described the third man as having had curly hair and wearing sunglasses.

The three men approached Brad. Defendant asked if Brad's folks were home. Brad replied that they were not but that his grandmother (Rose Borgwald) was home. Rose lived in a trailer located next to the home of Brad's parents.

Defendant went to Rose's trailer and knocked on the door. When Rose answered defendant entered her home, put a gun to her head and pushed her to the bedroom. Defendant struck Rose about the head with his fists. He then took money from her purse, her watch, a brooch and a ring. Rose then lost consciousness. Her next recollection is being in an ambulance en route to a hospital.

Defendant returned to the porch where Brad was sitting and asked to use the telephone book. Brad entered the house and all three men followed. Defendant flipped through a telephone book then picked up a purse from the dining room table and went through its contents. One of the other men rifled through some clothing and then tied Brad's hands behind his back with a handkerchief. Brad was taken to his bedroom, put on a bed and his feet were tied. Brad saw the man who tied him take his tape record-

er and leave the room. Shortly thereafter the second man returned to Brad's bedroom and blindfolded him.

When Brad's mother (Marian) returned she drove her stationwagon into her garage and went to its back to remove groceries. As she took items from the vehicle, Marian was approached by defendant and another man who entered her garage with guns drawn. She struggled with the other man briefly, then quieted when told she would not be hurt if she was quiet. During the struggle defendant approached Marian and attempted to strike her with a gun which Marian identified as belonging to her and which had been kept in a dresser inside the house.

The man who struggled with Marian told her they wanted money and jewelry. Her watch was taken from her. She was then taken to the bedroom where Brad had been placed. She was tied, blindfolded, gagged and put on the bed with Brad.

Marian had been asked where her car keys were and replied they were in her purse. After being put in the room with Brad she heard her car start and pull away. She was able to untie herself and Brad. She then went to her telephone and found its wires pulled loose. She ran to a neighbor's home and called police.

The neighbor went to Rose's home and found her lying face-down on the floor, bound and bleeding with bruises on her face.

After receiving the report, police officers observed the Borgwald automobile. The vehicle was stopped. It was occupied by three black males. Defendant was driving the stationwagon.

The three occupants of the Borgwald vehicle were taken to the Arnold Police Station. Defendant was searched and the .38 caliber revolver which had been taken from the Borgwald residence was found inside his waistband. Other items taken from the Borgwalds were found on the persons of the three men who were apprehended and in the stolen vehicle.

In his appeal, defendant asserts three points as errors. Defendant first assigns as error the failure of the trial court to instruct the jury on lesser included offenses of assault in the three counts of robbery. For his second point defendant contends the trial court denied him the opportunity to cross-examine Marian Borgwald as to her past dealings with black people for purposes of enabling defendant to attack her credibility in identifying defendant as a perpetrator of the offenses charged. For his third assignment of error defendant asserts that the trial court improperly refused to allow him to present demonstrative evidence of what is a "frisk." Defendant asserts that the mechanics of such a search would be relevant and material to the charge of carrying a concealed weapon.

Defendant failed to raise in his motion for new trial the assertion that the court erred in not instructing on lesser included offenses of assault. Thus, if that point is to be considered on appeal, it must be reviewed as "plain error" pursuant to Rule 29.12(b).

■ The issue presented, if substantiated by the facts in this case, could constitute "plain error." *State v. Lomack*, 586 S.W.2d 90, 93 (Mo.App.1979). Therefore, despite the irregularities in its manner of presentation, the issue will be considered under the plain error rule.

In Counts I and III of the information, defendant was charged with offenses of robbery in the first degree.[1] In Count II, defendant was charged with robbery in the second degree.[2]

In the first degree robbery counts defendant was charged with forceably stealing property while armed with a deadly weapon. Those counts related to the thefts from Rose Borgwald and Marian Borgwald. In the second degree robbery count defend-

ant was charged with forceably stealing property of Brad Borgwald.

As to Counts I and III, the jury was instructed as to robbery in the first degree and as to lesser included offenses of robbery in the second degree and stealing.[3] As to Count II, the jury was instructed as to robbery in the second degree and as to the lesser included offense of stealing.

Defendant contends that, applying the standards prescribed by § 556.046[4] as interpreted in *State v. Smith*, 592 S.W.2d 165, 166 (Mo. banc 1979), the offenses of assault in the first degree,[5] assault in the second degree[6] and assault in the third degree[7] are offenses included in the greater offenses of robbery in the first degree and robbery in the second degree. Defendant asserts that the trial court's failure to so instruct was error.

■ In order to be a lesser included offense, all factual and legal elements must be included in the greater offense. *State v. Amsden*, 299 S.W.2d 498, 504 (Mo.1957). In cases other than homicides, determinations of whether particular offenses must be instructed upon as lesser included offenses must be made on a case by case basis. *State v. Lomack*, supra at 93, citing *State v. Patterson*, 443 S.W.2d 104 (Mo. banc 1969) [2]. Error occurs only upon failing to instruct on lesser included offenses that are supported by the evidence. *State v. Martin*, 624 S.W.2d 879, 883 (Mo.App.1981).

■ In this case there is strong and substantial proof of defendant's guilt of the robbery offenses charged. A careful review of the evidence reveals no lack of any essential elements of the more serious offenses charged. The trial court committed no error in failing to instruct on the offenses of assault in the first, second or third degrees as lesser included offenses. *State*

---

1. § 569.020, RSMo (1978).

2. § 569.030, RSMo (1978).

3. § 570.030, RSMo (1978).

4. All statutes shall refer to RSMo (1978) unless otherwise stated.

5. § 565.050, RSMo (1978).

6. § 565.060, RSMo (1978).

7. § 565.070, RSMo (1978).

*v. Smith,* supra; *State v. Hill,* 614 S.W.2d 744 (Mo.App.1981); *State v. Heitman,* 613 S.W.2d 902 (Mo.App.1981); *State v. Harris,* 598 S.W.2d 200 (Mo.App.1980); *State v. Laususe,* 588 S.W.2d 719 (Mo.App.1979); *State v. Pride,* 567 S.W.2d 426 (Mo.App. 1978); § 556.046.2.

For his second point on appeal, defendant refers to his attorney's cross-examination of Marian Borgwald. The following inquiry was made of her:

Q. Have you ever had any dealings either socially or workwise with black people at all?

A. Yes, I have.

Q. Okay, what context was that?

The state then objected on the grounds of relevancy. The trial court sustained the state's objection.

Defendant asserts that the court erred in denying this line of inquiry. He asserts that the question asked was relevant for the purpose of attacking the credibility of Marian's having identified defendant as the person who committed the robbery. He apparently contends that white people with little experience in dealing with black people could have difficulty in distinguishing one black person from another.

■ Defendant does not assert that Marian's past experiences in dealing with black people would produce any motive to testify one way or another in this case. Rather, by his cross-examination defendant sought to obtain information as to Marian's past experiences which he contends would provide insight as to the accuracy of her identification of defendant. Under these circumstances the "context" of Marian's past dealings with black people is a collateral matter. Trial courts are vested with much discretion in determining the extent of permissible cross-examination in a criminal case. *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980); *State v. Turner,* 320 S.W.2d 579, 584 (Mo. 1959). This is particularly true as to collateral matters. *State v. Johnson,* 486 S.W.2d 491, 496 (Mo.1959); *State v. Messley,* 366 S.W.2d 390, 393 (Mo.1963).

■ Under the circumstances of this case, particularly where there was substantial other evidence as to defendant's identity, the trial court did not abuse its discretion in sustaining the objection to defendant's inquiry concerning Marian's past experiences with black people.

Defendant's third assertion of error is directed to the concealed weapon charge.

■ At trial, defendant's counsel advised the court that he desired one of the persons present in the courtroom "to be a part of a demonstration so we can show how the Detective patted down Mr. Booker that day." Counsel for the state objected to such a demonstration. The objection was sustained by the trial court.

Defendant, although acknowledging the issue of whether to permit an in court demonstration as being within the sound discretion of the trial court, asserts the court erred in not permitting the demonstration to be conducted. However, defendant has offered no explanation as to how he may have been prejudiced by the refusal to permit the demonstration.

To have permitted the requested demonstration could have done no more than dramatize a procedure which could be adequately described by testimony. The circumstances in this case are not unlike those in *State v. Beatty,* 617 S.W.2d 87, 92 (Mo. App.1981). There, the court held that the proffered demonstration, which the trial court did not allow, would have merely personalized or dramatized an argument which was being made. Here, even if preceded by a proper foundation, the demonstration which defendant's counsel sought to perform would have served no purpose other than personalizing or dramatizing the testimony of one of the arresting officers. Defendant was not prejudiced by the trial court's refusal to allow the demonstration. No abuse of discretion occurred.

Judgment affirmed.

MORGAN, P. J., BARDGETT and RENDLEN, JJ., and SEAY, Special Judge, concur.